Spencer D. Lorton v. Commissioner.
Lorton v. Commissioner
Docket No. 18975.
United States Tax Court
1953 Tax Ct. Memo LEXIS 234; 12 T.C.M. (CCH) 613; T.C.M. (RIA) 53194; May 29, 1953
Samuel S. DuHamel, Esq., and Isaac I. Bender, Esq., for the petitioner. George T. Donoghue, Jr., Esq., and Gerald R. Brooks, Esq., for the respondent. HARRON Memorandum Findings of Fact and Opinion HARRON, Judge: The respondent determined a deficiency in income tax for 1944 in the amount of $7,024.10. The respondent has made claim in his amended answer for the 6 per cent addition to the tax under section 294 (d) (2) of the Code in the amount of $421.45; and for addition to the deficiency either under section 293 (b), for fraud, in the amount of $3,512.05, or, in the alternative, under section 293 (a) for negligence, in the amount *235 of $351.21. The deficiency results from respondent's disallowance of several deductions claimed by the petitioner in his return in the total amount of $25,138.40. The deductions were disallowed on the ground that "the taxpayer failed to fully substantiate them." The petitioner has made claim in his amended petition for deductions, in addition to those taken in his return and disallowed, in the aggregate amount of $5,266.25. He has abandoned his claim for deductions which were taken in his return and disallowed, in the aggregate amount of $16,232.80, as follows: Legal fees
$4,672.50
Net operating loss
4,034.51
Hotel and travel
7,525.79
The respondent, upon trial of this proceeding, agreed that a part of alleged business expenses, which were claimed in the return and were disallowed, are deductible, namely, $88.85 of the sum claimed for tax and business services; and $3,000 of the sum claimed for travel and hotel expenses, or $3,088.85. Respondent has conceded on brief that petitioner is entitled to a deduction for office rent, as a business expense, to the extent of $1,410, of the total amount claimed in the petition, $2,030. Accordingly, the respondent now *236 agrees that petitioner is entitled to deductions for business expenses aggregating $4,498.85 more than he originally allowed. The general issues to be decided are whether the petitioner is entitled to deductions for alleged business expenses, depreciation of office equipment, automobile, and library, and losses from alleged worthless debts, as follows: 1. Rent for space in an office bldg.
$ 220.00
2. Rent for an apartment
400.00
3. Tax and business service
1,186.15
4. Office supplies
1,270.60
5. Depreciation
3,360.00
6. Losses from bad debts
3,236.25
Total
$9,673.00
The other questions presented for decision are as follows: Whether petitioner is entitled to receive under section 22 (b) (13) of the Code, as it applies to 1944, exclusion of $1,500 from gross income with respect to compensation received for active service as a commissioned officer in the United States Navy. Whether petitioner substantially underestimated his estimated tax for 1944 so as to be liable for the 6 per cent addition to tax prescribed by section 294 (d) (2). Whether any part of the deficiency is due to fraud with intent to evade tax under section 293 (b). If none of the deficiency *237 is due to fraud, whether any part of the deficiency is due to negligence or intentional disregard of rules and regulations under section 293 (a). Findings of Fact Petitioner filed his return for 1944, on a cash basis, with the collector for the second district of New York. The petitioner is a certified public accountant. He has practiced as a certified public accountant since 1939. He has studied and taught courses in Federal taxation. He has taken courses in three law schools, but he is not admitted to the Bar of any state. The petitioner is now, and during the taxable year was, a resident of the State of Illinois, except for a period of military service. At the time of the trial of this proceeding, the address of the residence of the petitioner and his wife was 805 South Douglas Avenue, Springfield, Illinois. They rented at that address a furnished apartment from petitioner's father-in-law. The petitioner and his wife had had their residence at the above address for 15 years prior to the trial of this proceeding. The petitioner and his wife were away from Springfield during the period in 1944 when petitioner was on active duty in the Navy, and during that time the petitioner *238 and his wife occupied a room in the Statler Hotel in Boston. Petitioner, an officer in the Navy, was not required during 1944 to live at his post of duty, and he was able to reside with his wife in Boston. During 1944, before his induction into the Navy, the petitioner was away from his residence in Springfield, Illinois, from time to time, in the pursuit of business activities. Petitioner's wife, Ruth K. Lorton, formerly was a deputy collector in the Bureau of Internal Revenue. She has taken university courses in accounting. She has been associated with petitioner in his business for over 16 years. She performed work for petitioner during 1944 in the preparation of income tax returns and in the making of audits. Petitioner's wife prepared his income tax return for 1944. Petitioner's business in 1944 consisted principally of making audits for county departments, audits for business concerns, and preparing income tax returns for clients. During 1944, petitioner's principal place of business and office was Springfield, Illinois. He rented office space in the Central Illinois Public Service building in Springfield for eleven months, and for one month he rented office space in the *239 Ridgely building in Springfield. The respondent agrees that rent paid for the Springfield offices in the amount of $1,410 is deductible. Petitioner employed several persons during 1944. The number of employees varied. Some persons performed work for petitioner on a contract basis, and some were hired as employees. Petitioner deducted in his return for 1944, salaries and wages in the amount of $2,797.43. Respondent allowed the deduction. Petitioner's business in 1944 was conducted in several places other than Springfield, Illinois. His business was conducted, also, in Olney, Illinois, and in Mount Carmel, Illinois, which are located about 130 miles from Springfield; and in Chicago and Boston. He had clients in various towns in southern Illinois. The petitioner carried on some of his business activities in an itinerant way, setting up a desk, or temporary office, in hotel rooms or other places away from Springfield, Illinois. During the first four months of 1944, petitioner rented an office in the LaSalle Street building at 33 North LaSalle Street, Chicago, for which he paid rent of $55 per month, or $220. Petitioner carried on business activities at this office. Rent paid in 1944 *240 in the amount of $220 was an ordinary and necessary business expense. Petitioner also rented in 1943 and 1944, space in an apartment hotel at 240 East Delaware Place, Chicago, for $80 per month. In 1944, he paid $400 for the space for the last month of 1943 and the first four months of 1944. The location of the apartment hotel is near the north side of Chicago which is a considerable distance from 33 North LaSalle Street. Petitioner conducted business activities at 240 East Delaware Place. He used this location for the conduct of business so as to reach clients in that neighborhood who wanted income tax returns prepared. Certain auditing work was done at this place. Although the space rented was a furnished hotel apartment, the manager permitted petitioner to carry on his business activities there. From time to time, either petitioner and his wife or employees stayed overnight in the apartment when they were working there so that the apartment served the same function as hotel accommodations while petitioner was away from his main office in Springfield in pursuit of business. The rent paid in 1944 for the space at 240 East Delaware Place in the amount of $400 was an ordinary and *241 necessary business expense. At some time before March 22, 1944, the petitioner received the commission of Lieutenant Junior Grade in the United States Navy, and he was received into active service. He was on active duty in the Navy on March 22, 1944, or March 24, 1944, and he continued to be on active duty during the remainder of 1944. He left Chicago on March twenty-second for Wellesley, Massachusetts, where he was stationed at the Navy Supply Corps School until about May 24, 1944. He was in travel status for a few days after May twenty-sixth, and he returned to Chicago for a few days at that time. He reported for duty on June 1, 1944 at the Naval Air Station at Squantum, Massachusetts, which is about 30 miles from Boston. His post was at Squantum for the remainder of 1944. During the entire period the petitioner was on active duty in the Navy, during 1944 and thereafter, he was stationed in the vicinity of Boston. During 1944, the petitioner paid ordinary and necessary business expenses in the total amount of $314.95 for various books, publications, and business services, in addition to $88.85, which respondent concedes, as follows: Telephone call and mail service
$ 96.00
Telephone call and mail service
82.50
Advertising
9.25
Office magazines
6.50
Office magazines
10.00
Books and publications
11.70
Books and publications
8.00
Books and publications
48.00
Books and publications
43.00
Total
$314.95
*242 During 1944, petitioner paid $105.75 for miscellaneous materials and office supplies, in addition to expenditures for which deductions were taken in his return and allowed, as follows: Towels
$ 26.00
Cards
1.00
Pamphlets
2.50
Account books
5.00
Report
1.50
Journal
4.00
Brief case
1.15
Work pads
10.00
Seals
1.00
Forms
7.00
Report
4.00
Photostat
1.17
Paper
1.38
Labels
1.63
Pads, paper
6.78
Paper
.87
Rubber stamps
.85
Rubber stamps
1.80
Pencils
4.92
Pads
12.20
Door sign
11.00
Total
$105.75 The above expenditures were ordinary and necessary business expenses. The depreciation schedule in the petitioner's income tax return for 1944 shows the following: Date
Useful
Depreciation
Property
Acquired
Cost
Life
Allowable 1944
Automobile
12/31/41
$ 3,000
4 yrs.
$ 750
Equipment
1943
11,100
5 yrs.
2,220
Library
1940
3,900
10 yrs.
390
Total
$3,360 The petitioner did not expend $11,100 for office equipment in 1943, nor $3,900 for library books in 1940 as stated in his income tax return. The petitioner did not keep a permanent and regular record in regular books of account in the *243 regular course of business of items of depreciable property used in his business reflecting the cost, dates of acquisition, useful life, and the amount of depreciation claimed in prior years. The petitioner has failed to prove the amounts of depreciation for the year 1944 of office equipment and library. The petitioner, during 1944, owned a 1942 Buick car which he used for both business and personal purposes. A reasonable allowance for depreciation on the petitioner's automobile for business use during 1944 is not more than $100. Petitioner advanced $75 to one W. S. Johnston in December 1939 in Springfield, Illinois. He also advanced money to Johnston in March 1940. Johnston gave petitioner two promissory notes; one for $75, dated December 31, 1939, and one for $1,650, dated March 11, 1940. The note for $75 bore interest at the rate of 7 per cent, and was due 6 months after date. The note dated March 11, 1940 bore 6 per cent interest and was due June 10, 1940. This note also bore the notation "Loan of money & services." Johnston was an acquaintance of petitioner who used a desk in his office in Springfield in 1940 free of charge. Money advanced to Johnston by petitioner was not *244 advanced for any purpose connected with the conduct of petitioner's business. In 1940, Johnston lived at 411 South Seventh Street, Springfield. He bought, sold, and owned oil leases, and arranged oil drilling agreements. Petitioner did not know the financial condition of Johnston in 1939 and 1940, and did not know whether he was solvent in 1941, 1942, and 1943. Petitioner has not received any payment on the notes. Petitioner had an acquaintance and neighbor, R. W. Ziller, who was a lobbyist in Illinois. At the time of the trial of this proceeding, Ziller had a materials service company in Springfield, Illinois. Ziller never gave petitioner any note for an alleged 30-day loan in March 1944, of $1,500. Ziller went into bankruptcy in the Federal District Court in Springfield, Illinois. Ziller's financial position was very poor in 1944. No claim for $1,500 was filed against Ziller by petitioner when he went into bankruptcy. No suit was filed by petitioner to collect $1,500 from Ziller. No loan was made to Ziller by petitioner of $1,500 in connection with petitioner's business. In 1944, petitioner did not sustain losses from nonbusiness debts of $75, and $1,650 upon the notes of Johnston. *245 In 1944, petitioner did not sustain a loss from a nonbusiness debt of $1,511.25 on account of an alleged advance of $1,500 to Ziller in March 1944, plus an alleged charge of $11.25 for traveler's checks. The petitioner's income tax return for the year 1944 contains no mention of military compensation. The only gross income reported by the petitioner is disclosed under Schedule C of the return (profit or loss from business or profession). No itemization of the total reported as gross receipts from business appears in the petitioner's income tax return. At the time the petitioner filed his income tax return for the year 1944, he was fully aware of the $1,500 exclusion from gross income applicable to military compensation, and knew that his Navy allowances were not includible in gross income. The petitioner read and signed his income tax return for 1944. The petitioner is not entitled to an exclusion, from reported gross income, of $1,500 for military compensation. The petitioner filed his declaration of estimated tax for the year 1944 with the collector for the second district of New York. In the declaration of estimated tax, the petitioner estimated his income and victory tax for *246 the year 1944 as "none". The amount of estimated tax, "none", as stated by the petitioner in his declaration of estimated tax was less than 80 per cent of the tax due from the petitioner for the year 1944. The petitioner, in his income tax return for 1944, reported gross income from "business or profession" in the total amount of $26,381.71. Respondent has not determined that petitioner's gross income was larger than the income which petitioner reported in his return. The petitioner took deductions in his return totaling $32,512.78 which resulted in the reporting of a net loss of $6,131.07 for 1944. Of the total amount of deductions taken, the respondent disallowed deductions totaling $25,138.40. The petitioner has made claim in his amended petition for additional deductions in the total amount of $5,266.25. Accordingly, the petitioner has made claim, at one time or another, for deductions from his income for 1944 in the aggregate amount of $37,779.03. During the trial of this proceeding the petitioner abandoned claim to various deductions, in the total amount of $16,232.80, which he deducted in his return. No regular books of account, such as a journal ledger, were kept by *247 petitioner for petitioner's business, or for his personal accounts, during 1939, 1940, 1941, 1942, 1943, and 1944. No informal set of books was kept by petitioner in any of the above years in which original entries were made, daily or periodically in the regular course of petitioner's business, reflecting business or personal receipts and business or personal expenditures, cost or other data regarding depreciable property, or other matters ordinarily recorded in books of account which are maintained currently in the regular course of business. Petitioner maintained a checking account in the State Bank of Cowden, located in Cowden, Illinois, and in the National Shawmut Bank in Boston. Petitioner's wife kept, during 1944 and other years, envelopes in which she filed some bills, bank statements, cancelled checks, invoices, and pieces of paper on which she had made notations. Such "files" of records of expenditures, purchases, and account payable were incomplete for 1944 and earlier years. The "files" do not contain matching invoices and cancelled checks to show that checks drawn were, in fact, made in payment of specific bills. Some invoices do not bear "paid" stamps of the vendor, *248 and some invoices are receipted as paid, or bear notations made by petitioner's wife. Such records as were kept by the petitioner's wife were fragmentary and inadequate to reconstruct, or support with reasonable accuracy, the items of deductions claimed by the petitioner as business expenses, and they did not accurately reflect petitioner's true net income for 1944. In his income tax returns for the years 1939 through 1948, inclusive, the petitioner reported net losses. In his return for 1944, the petitioner claimed a deduction for a net operating loss in the amount of $4,034.51. The respondent disallowed the deduction. At the trial of this proceeding, the petitioner did not contest respondent's disallowance of the claimed deduction. In his return for 1944, the petitioner deducted $4,672.50 for "Legal fees". The respondent disallowed the deduction. The petitioner presented an explanation of the claimed deduction for alleged legal fees in a schedule which he presented to representatives of the Bureau of Internal Revenue during a conference relating to his income tax liability for 1944. He advised the representatives that he had paid fees totaling $4,672.50, as follows: $4,362.50 *249 to his attorney, S. S. DuHamel; $150 to Scott & Co.; $100 to W. J. Walsh; and $60 to Boston University. He, also, advised the Bureau's representatives that of the amount allegedly paid to DuHamel, all but $25 had been paid in cash. At the trial of this proceeding, the petitioner did not contest the respondent's disallowance of the claimed deduction for alleged payments of alleged legal fees. Out of deductions taken by the petitioner in his return for 1944 totaling $32,512.78, deductions in the total amount of $21,528.85 have not been substantiated by the petitioner. Deductions taken by the petitioner in his return for 1944 were excessive to the extent of $21,528.85. Part of the deficiency in income tax for 1944 is due to fraud with intent to evade tax. Opinion The petitioner in this proceeding now claims deductions for rent, various business expenses, losses from bad debts, and depreciation. He does not contest all of the determinations of the respondent but he contests part of the deficiency. The petitioner has the burden of establishing by competent proof that he is entitled to certain *250 deductions. Birnbaum v. Commissioner, 117 Fed. (2d) 395. The petitioner also has the burden of proving that he is entitled to receive under section 22(b)(13) of the Code, as it applies to 1944, exclusion of $1,500 from gross income with respect to compensation received for services in the Navy. Furthermore, the petitioner has the burden of establishing, under section 293(a) of the Code that none of the deficiency, if any deficiency is found, is due to negligence or intentional disregard of rules and regulations. The respondent has made claim for addition to the deficiency for fraud under section 293(b), and under this issue, the respondent has the burden of proof. M. Rea Gano, 19 B.T.A. 518; L. Schepp Co., 25 B.T.A. 419; Harry Feldman, 34 B.T.A. 517; section 1112, Internal Revenue Code. The petitioner has from time to time, with respect to the year 1944, claimed deductions, either in his return or in his petition to this Court, and, later, he has abandoned or settled certain claimed deductions. Also, the respondent upon trial has made various concessions. In order to clarify the net result of petitioner's *251 claims and respondent's determinations and concessions, and to make clear the amount and extent of deductions which respondent has allowed, we now summarize the matter: The respondent allowed deductions totaling $7,374.38, out of all of the deductions taken in the return. Upon trial, the respondent, either during the trial or on brief, has conceded that petitioner is entitled to additional deductions totaling $4,498.85, so that the petitioner now has been allowed deductions totaling $11,873.23. On the other hand, the petitioner no longer makes claim for deductions totaling $16,232.80. This is to say, he has abandoned some of the deductions he has claimed at one time or another, and he has by settling other claimed deductions waived a balance of deductions claimed. As a result of the above, there are at issue in this proceeding claims for deductions aggregating $9,673. Some of the disputed deductions were claimed in petitioner's return and were disallowed, and others were claimed in the petition to this Court. Although the petitioner reported a net loss in his return for 1944 in the amount of $6,131.07, he has now conceded by virtue of waiving claimed deductions of $16,232.80, *252 that he realized in 1944, net income of at least $3,335.48. That amount of net income results from deducting from gross income of $26,381.71, the deductions allowed by the respondent, $11,873.23, and taking into account all of the items of deduction waived as well as all of the items which remain in dispute. Accordingly, petitioner admits that there is a deficiency for 1944. It is necessary, in view of the business expense deductions which remain in dispute, to set forth in detail the amounts and the nature of the deductions which now have been allowed, the deductions waived, and the claimed deductions at issue, which are as follows: DEDUCTIONS ALLOWED
Deductions Allowed Upon Audit of Return
Salaries, wages
$2,797.43
Interest
326.56
Taxes
761.52
Postage
920.60
Light
180.70
Printing and stationery
875.60
Express
120.19
Memberships
175.50
Telephone, telegraph
1,216.28
$ 7,374.38
Deductions Allowed by Stipulation
Office rent
$1,410.00
Tax and business services
88.85
Travel expense
3,000.00
$ 4,498.85
Total
$11,873.23
DEDUCTIONS WAIVED
Legal Fees
$4,672.50
Traveling Expenses
5,065.29
Hotel expenses
2,460.50
Net Operating Loss
4,034.51
Total
$16,232.80
DEDUCTIONS AT ISSUE
Tax and business services
$1,186.15
Deducted in return
Depreciation
3,360.00
Deducted in return
Office Supplies
1,270.60
Deducted in return
Rent
620.00
Claimed in petition
Bad Debt Losses
3,236.25
Claimed in petition
Total
$ 9,673.00
*253 Office Rent. We are satisfied from the evidence and have found as a fact that petitioner paid for the rental of space in two locations in Chicago, $220 and $400; and that the space rented was used by petitioner in the pursuit of his business. The expenses were ordinary and necessary business expense. Part of the expense of the East Delaware Place space is properly deducted as expense of lodging while away from home in the pursuit of business activities. No allocation is necessary between the lodging expense and rent because both were business expense, under the facts. It is held that rent in the amount of $620 is deductible under section 23(a)(1)(A) of the Code. Tax and Business Services. A deduction for items totaling $1,275 was claimed by the petitioner under the heading "tax and business services." The respondent has conceded that the petitioner is entitled to deduct $88.85, leaving in issue $1,186.15. The evidence establishes, and we have found as a tact, that the petitioner expended, in addition to $88.85, the sum of $314.95 for tax and business services. The petitioner has produced cancelled checks or invoices which have established that expenditures of $314.95 were ordinary *254 and necessary business expenses. With respect to claimed deductions totaling $871.20, the petitioner has failed in his burden of proof. The documentary evidence offered in support of the items is not impressive, and it does not corroborate the testimony of the petitioner and his wife. Their testimony is not persuasive. The petitioner presented, for example, three unfolded sheets of paper, 8 1/2inch X 11inch, bearing the letterhead "The Accounting Publishing Company of America, Box 222, Cowden, Illinois," which he contended were receipts received through the mail for payments by him of $410.25 for various tax services. However, these sheets of paper are not competent evidence of the item for which deduction is claimed. For example: Post Office "Box 222, Cowden, Illinois" was held by the petitioner during 1944. The statements in question were addressed to the petitioner, and they have pencilled notations made by the petitioner's wife. She testified that the statements show payment for tax services. The statements are initialed as paid on various dates in 1944 by "F. J. C." However, the petitioner was unable to identify the intial, "F. J. C." His wife stated that they were the initials *255 of somebody in the office of "The Accounting Publishing Company of America," but she was unable to name the person. She testified that she paid the statements by bank draft, but she could not identify any bank from which the alleged drafts were allegedly purchased. No invoices or receipted bills from publishers or vendors of tax services were produced. The petitioner testified that "The Accounting Publishing Company of America" was a partnership owned by the petitioner and two other individuals, and that it was used by the petitioner for the purpose of purchasing, at a discount, office supplies and tax services. There is no clear proof that the alleged payments for alleged tax services were in fact made for tax services and publications. In support of another claimed deduction for $226.90, we are given a statement which has no printed caption, which contains the petitioner's name and address, and a notation "20,000 circular letters" which was made in pencil by petitioner's wife. The alleged payment was allegedly made in cash to the "American Business Service," which name is printed in ink at the top of the statement, for circular letters on payroll systems. Petitioner apparently *256 contends that they were sent to clients or prospective clients. But no samples of the alleged circular letters, and no mailing lists were produced by the petitioner. Again, the evidence does not establish either the payment of the alleged expense, or that the alleged item was used in petitioner's business. The data offered by the petitioner as proof of other items in question, likewise, fails to establish that the alleged items represented ordinary and necessary business expenses, or that the alleged expenses actually were paid by the petitioner during the taxable year. [1] It is held that the petitioner is entitled to a deduction, as an ordinary and necessary business expense under section 23(a)(1)(A) of the Code, of only $314.95 for tax and business services, and that the balance claimed, $871.20, is not deductible for failure of proof. *257 Office Supplies. The claimed deduction for office supplies in the amount of $1,270.60 is in addition to deductions of $920.60 for postage, $875.60 for printing and stationery, and $120.19 for express charges, which items were deducted by the petitioner in his income tax return and were allowed by the respondent. The office supplies were allegedly purchased by both check and cash. The petitioner offered into the record cancelled checks and some purported receipts and invoices. Before the trial and after 1944, the petitioner prepared a typewritten list of the checks and alleged invoices. The petitioner and his wife testified about the alleged expenditures, but in many instances leading questions were asked based upon the typewritten list and notations made on checks. Most of the checks in question were written by petitioner's wife. She testified that notations appearing on the checks were made by her either when the checks were drawn or sometime after they were returned from the bank, and that frequently she would cash checks before making a purchase and would neglect to obtain a receipt for her purchase. With a few exceptions, the alleged purchases of office supplies were not evidenced *258 by cancelled checks drawn to the order of vendors, or receipted bills, or invoices showing the nature of an alleged purchase; and payment in the taxable year has not been proved The record does not establish that many of the alleged expenditures constituted ordinary and necessary expenses which were paid in the taxable year. The petitioner has not established by competent proof that he expended, during 1944, $1,164.85 for office supplies or such miscellaneous items as can properly be so designated. Therefore, for failure of proof, the claim for deductions in the above amount is denied. On the other hand, upon careful analysis and consideration of all of the evidence adduced under this issue, it has been found as a fact that $105.75 was spent in 1944 for office supplies, and it is held that this amount is deductible under section 23(a)(1)(A). The following observation about the record under this issue is pertinent: We have observed heretofore, in other proceedings, that testimony given in response to leading questions, and that uncorroborated, selfserving statements by a party upon whom *259 the burden of proof rests can be given little weight. In this proceeding, petitioner's proof of alleged business expenses of $1,164.85, claimed for "office supplies," lacked probative value [2] and was not persuasive. *260 The sum of $1,164.85 includes an alleged purchase of "office supplies" used in petitioner's business costing $641.40. The evidence offered to support a business expense deduction in this amount falls far below the requirement of section 23(a)(1)(A) that the expenditure must be ordinary and necessary in the conduct of the taxpayer's business. The petitioner contends that he purchased in Boston in 1944, Christmas and birthday cards, and Kodachrome camera film for making pictures of petitioner in uniform, and that the cost of all of such merchandise was an ordinary and necessary expense of making business contacts with clients. However, petitioner could not produce a cancelled check, or checks, in the amount of $641.40 payable to the alleged vendor. He and his wife testified that the purchases were made with traveler's checks. No exhibits of the cards, or of pictures of petitioner were offered in evidence, nor were any mailing lists of clients offered in evidence. Petitioner relied upon an undated, unitemized memorandum, a small piece of paper, with a printed caption, "Order Blank, Quality Cut Rate Card Shoppe," containing a series of figures, but without any listing of the merchandise, *261 totaling $641.40, which bore a notation in handwriting, "May 17 paid in full S. Marks." Even if we were to give full weight to this memorandum as proof of expenditure $641.40 for "office supplies," which we cannot do, it does not prove that the alleged amount was spent in 1944. Included, also, in the sum of $1,164.85, are alleged purchases of "office supplies" in the amounts of $270.86 and $90. In support of claimed deductions thereof, petitioner offered into the record three cancelled checks totaling $270.86, made payable to petitioner's father-in-law. The petitioner claims that his father-in-law purchased office supplies in the above amount, for which the checks were reimbursement, but this contention lacks corroboration. Petitioner's father-in-law did not testify, and petitioner did not produce any receipt from him, or any statement of account rendered by him, or any invoices or receipted bills showing that office supplies in the above amount had been purchased. Furthermore, the petitioner testified that his residence in Springfield, Illinois, a furnished apartment, was rented from his father-in-law. Deduction of $270.86 must be disallowed for failure of proof. With respect to *262 the item of $90, petitioner presented a cancelled check for that amount made payable to a Chicago photographer, and he testified that this expenditure was for photographs of himself in uniform. He contends that the photographs were for business purposes - for clients - and that the cost thereof was, therefore, not a personal expense. Petitioner has not proved that the photographs were sent to clients, nor, if they were, that the expenditure was an ordinary and necessary business expense. Deduction of this amount, therefore, is denied. Depreciation of Office Equipment, Library, and Car. The petitioner cliams a deduction of $3,360 for depreciation on office equipment, library, and an automobile allegedly used in his business as a certified public accountant. The depreciation schedule (schedule F) in the petitioner's income tax return for 1944 shows the following: Date
Useful
Depreciation
Property
Acquired
Cost
Life
Allowable 1944
Automobile
12/31/41
$ 3,000
4 yrs.
$ 750
Equipment
1943
11,100
5 yrs.
2,220
Library
1940
3,900
10 yrs.
390
Total
$3,360
*263 The petitioner, in order to secure a deduction for depreciation, has the burden of proving the cost of the assets in respect of which depreciation is claimed, their date of acquisition, their useful life, and the amount of depreciation, if any, claimed in prior years. The petitioner must also establish the fact that the property in respect of which depreciation is claimed was used in his trade or business. The factors entering into the computation of a depreciation allowance should be recorded in the course of business in permanent records kept by the taxpayer. See Regulations 111, sections 29.23(1). The petitioner admitted at the trial that he did not expend $11,100 for office equipment in 1943, or $3,900 for library books in 1940, as stated in his income tax return. He testified that the data appearing in schedule F of his return was based on "estimates" made by him for the purpose of calculating depreciation. The petitioner kept no permanent record of depreciable property in the regular course of his business. Two exhibits offered in evidence by the petitioner, and purporting to be a physical inventory of depreciable property used by petitioner in his business as a certified *264 public accountant and purchased by him prior to December 31, 1944, were prepared sometime subsequent to the taxable year. The exhibits, which consisted of two hard bound cash books, listed hundreds of items and in many instances duplicate items, of office equipment and books. The alleged cost of each item listed was "estimated" and entered in the exhibits by the petitioner sometime subsequent to 1944, although the petitioner, admittedly, is no expert on the cost and useful life of office equipment and books. The petitioner's wife testified that the exhibits were in existence in March 1945, and were used by her in computing the depreciation "estimate" claimed in petitioner's income tax return. However, the petitioner admitted on cross-examination that the exhibits were not completed until three or four years subsequent to the filing of his income tax return. Furthermore, the respondent has established that the first edition of two of the books on which petitioner claims depreciation for the year 1944, were not published until 1947 and 1948. This is a striking example of the inconsistencies and inaccuracies, to characterize it by no harsher terms, in the testimony of the petitioner and *265 his wife. The depreciation exhibits offered by the petitioner are without evidentiary value, and the petitioner has produced neither cancelled checks, invoices nor receipted bills to establish the cost and dates of acquisition of the many items of property on which he is claiming depreciation. [3] Here, again, petitioner's claim for a deduction rests upon the uncorroborated testimony of himself and his wife. Both petitioner and his wife testified from the exhibits. Throughout lengthy testimony, covering each item listed, petitioner was unable to specify dates of acquisition; he gave only estimates as to cost, and only his opinion as to useful life which in practically all instances was at variance with the normally accepted useful life of the items; and no evidence whatever was presented as to the amount of depreciation claimed in prior years. And, in practically all instances, he could not identify the sellers from whom he purchased the alleged items of depreciable property. In one instance, for example, the petitioner *266 refused to testify to the date of the alleged purchase of 56 sectional bookcases at a cost of $700, stating, "I hesitate to testify to that because it might be impeached." We note, also, that although the exhibits were supposedly prepared by the petitioner and two employees from a physical inventory, the employees were not called by the petitioner to testify. The Court cannot compute a reasonable allowance for depreciation on alleged office equipment and library, nor hold that the Commissioner's disallowance of the depreciation deduction claimed was incorrect, on the basis of the record before us. See Louis Boehm, 35 B.T.A. 1106, 1110 It is concluded that the petitioner has failed to prove that he is entitled to any depreciation on office equipment and library, and deductions claimed of $2,220, and $390 are denied. The remaining item on which depreciation is claimed is a 1942 Buick car, which petitioner testified he purchased in December 1941, for $3,000 although no other evidence of cost was presented. He claims a depreciation deduction of $750 in 1944. The record establishes, and we have found, that the petitioner's automobile was used for both business and personal *267 uses during 1944, and that a reasonable allowance for depreciation in 1944 is $100. Cohan v. Commissioner, 39 Fed. (2d) 540. It is held that petitioner is entitled to a depreciation deduction of $100 under section 23(1) of the Code. The questions presented above relating to claimed deductions for business services expenses, office supplies, and depreciation of office furniture, library, and automobile are questions of fact. Petitioner rests his claims for deductions, in the amounts set forth above, largely upon testimony of himself and his wife. Respondent presented the testimony of several witnesses who had been clients of petitioner for the purpose of establishing that petitioner's testimony is not credible. The testimony of these witnesses relates to practices of the petitioner in the preparation of their income tax returns. We do not deem it necessary to summarize their testimony but it raises doubts about the credibility of petitioner's testimony about the alleged expenditures for various alleged business expenses. However, the findings and conclusions arrived at in this proceeding rest primarily upon analysis of petitioner's proof. Petitioner has failed in meeting *268 his burden of proof. He has been unable to establish by convincing evidence, either by testimony or by corroborative proof that he made alleged expenditures in the taxable year or in the years in which he alleges he purchased depreciable property; and that the alleged expenditures were ordinary and necessary business expenses, all of which has been indicated above. Despite petitioner's experience as an accountant since 1939, and his studies, before 1944, of federal taxation, and his experience in preparing income tax returns, petitioner failed to keep in the course of his business, in 1944 and before, regular books of account, or complete accounting records of an even informal type, which reflected accurately his business receipts and expenditures. The Internal Revenue Code, section 54(a), requires that every person liable to any tax shall keep such records as the Commissioner may prescribe; and that if no method of accounting is regularly employed, or if a method employed does not clearly reflect income, then the computation of net income shall be made in accordance *269 with such method as the Commissioner believes clearly reflects income. Section 41. Petitioner is particularly qualified to understand the requirements of the Code and to keep adequate books and accounting records which clearly reflect his net income. His inability to establish by competent proof the nature and amount of various alleged business expenses must be recognized by him to present a problem of his own creation. The Court has accorded such weight as it can give properly to petitioner's proof under rules of evidence. It has been governed, also, by the now well established rule, that bare assertions of a taxpayer that expenditures claimed in a tax return as deductions were actually made and were ordinary and necessary business expenses are not sufficient to overcome the presumption of correctness which attaches to the Commissioner's determinations. This is particularly true where the taxpayer's testimony is not convincing when viewed in the light of all of the evidence adduced, where sworn statements of the taxpayer are shown to be in conflict with his testimony, where testimony itself contains inconsistencies and errors of fact, and where documentary proof not only fails to *270 corroborate the taxpayer's testimony but casts doubt upon its credibility. Birnbaum v. Commissioner, supra; Hoefle v. Commissioner, 114 Fed. (2d) 713; Carmack, et ux. v. Commissioner, 183 Fed. (2d) 1, certiorari denied, 340 U.S. 875. In this proceeding, there are bare assertions of fact by petitioner, and documentary proof fails to corroborate his testimony in many instances. Bad Debt Losses. No deduction for bad debts was claimed by the petitioner in his income tax return. The petitioner alleged in his pleadings that he sustained bad debt losses in 1944, in the amount of $3,800 "which represents cash advanced by petitioner during the years 1944." The petitioner offered evidence relating to only $3,236.25 of the alleged loss, and now contends that he loaned $75 and $1,650 to W. S. Johnston in 1939 and 1940, respectively, and $1,500 to R. W. Ziller in 1944. In connection with the last item $11.25 has been added by petitioner. This amount, he contends was a charge for alleged traveler's checks in the amount of $1,500. The petitioner apparently contends that the alleged losses come within section 23(k)(1), (relating to business *271 bad debts) since he claims a deduction for the entire amount of the alleged losses, although he does not refer in his pleadings or on brief to either subsection (1), or (4), or section 23(k) of the Code. In order to come within the provisions of section 23(k)(1) debts must be those "the loss from the worthlessness of which is incurred in the taxpayer's trade or business". But the petitioner has failed to establish that the alleged loans were proximately related to his business. In fact the record clearly shows that the loans, if made at all, were made to friends and were nonbusiness advances. The petitioner is not entitled to a deduction under section 23(k)(1), and the issue can only be considered under section 23(k)(4) which relates to nonbusiness bad debts. Section 23(k)(4), which limits the amount of the allowable deduction for a nonbusiness bad debt loss, provides that "if a nonbusiness debt becomes worthless within the taxable year, the loss resulting therefrom shall be considered a loss from *272 the sale or exchange, during the taxable year, of a capital asset held for not more than 6 months". See Jan G. J. Boissevain, 17 T.C. 325, 329; Robert Cluett, 3rd, 8 T.C. 1178, 1179. In order to secure a deduction for a nonbusiness bad debt loss, the petitioner has the burden of proving the existence of a bona fide debt; that the debt had value when created or acquired; and that the debt in fact became worthless in the taxable year. W. A. Dallmeyer, 14 T.C. 1282, 1291; Fred A. Bihlmaier, 17 T.C. 620, 626; Ray Crowder, 19 T.C. 329, Promulgated November 25, 1952). (a) The Johnston Notes. There are in evidence two notes of Johnston, both due in 1940. Assuming that the notes are evidence of bona fide loans to Johnston, the petitioner has failed to establish that the debts had any value on January 1, 1944, and that they in fact became worthless in 1944. He contends the bad debt loss is deductible in 1944 because it was in that year that Johnston "disappeared". But the required proof is not satisfied by a mere showing that in the year in which the loss deduction is claimed, the debt cannot be collected. That may have *273 been true in some earlier year. Furthermore, petitioner did not know whether Johnston was solvent in 1939 and 1940 when the alleged loans were made to him. There must be evidence that the debt had value when created. Also, there is no evidence before us relating to Johnston's financial condition in 1941, 1942, or 1943, i.e., whether he was solvent in any of those years. Since petitioner has failed to show that the alleged bad debt loss was sustained in 1944, a deduction for the Johnston debt is denied. (b) The Alleged Loan to R. W. Ziller. Petitioner could not produce any written evidence of a loan to Ziller of $1,500; he had no note from Ziller and no cancelled check made payable to Ziller. Ziller was not called to testify about the alleged loan and his failure to make payment, although petitioner testified that at the time of the trial of this proceeding Ziller had a materials service company in Springfield, Illinois. Petitioner's proof of the alleged loan of $1,500 to Ziller consists of his testimony to the effect that he bought traveler's checks in the amount of $1,500 with his own check for $1,511.25; and that he endorsed and gave the traveler's checks to Ziller, in a Chicago *274 hotel room in March 1944, as a loan. A cancelled check made payable to the State Bank of Cowden, in Cowden, Illinois, was introduced in evidence. Petitioner's wife testified that petitioner met Ziller at a hotel in Chicago in March 1944, and that although she was there, she joined the men after they had completed a conversation. She did not know how many traveler's checks, or what amount, petitioner advanced to Ziller. Petitioner's claim to the deduction is based on his uncorrobated testimony. However, assuming, arguendo, that petitioner made an unsecured loan of $1,500 to Ziller in March 1944, there remains the question of whether the debt had any value when created or acquired, and whether the loan in fact became worthless in 1944. Petitioner has failed to establish either fact. Petitioner testified that Ziller's financial condition was poor, that Ziller was in "virtual bankruptcy" when he made the alleged loan. We cannot find, therefore, that the debt, if such there was, had any value when created. Debts which are worthless when created or acquired are not deductible. The test is whether *275 a disinterested, prudent lender of money would have made the loan, which gave rise to the debt. A prudent lender of money would not have made a loan to Ziller when he was in "virtual bankruptcy." Furthermore, there is no evidence that the alleged debt, if it had any value when acquired, in fact became worthless in 1944. Petitioner testified that Ziller went into bankruptcy after 1944, but admitted that he did not file any claim for the alleged debt of $1,500. His failure to file a claim for the debt in the bankruptcy proceeding suggests that no loan was made to Ziller, as does petitioner's admission that he did not take any legal steps to collect the debt. The critical point is that there is no proof that the alleged debt either had a value when created, or that it became worthless in 1944. The loss deduction must, therefore, be denied. See Hoefle v. Commissioner, supra. We hold that the petitioner is not entitled to any deduction under section 23(k) of the Code for bad debt losses. Exclusion From Gross Income. The petitioner was on active duty as a commissioned officer in the United States Navy from March through December 1944. During the trial of this proceeding *276 he amended his pleadings to claim, for the first time, an exclusion from gross income of $1,500, under the provisions of section 22(b)(13)(A) of the Code, for compensation received while in military service and allegedly included in his income tax return in reported gross receipts from his business. Section 22(b)(13)(A) of the Code, as it applied to the year 1944, provided that the first $1,500 of compensation received for active service as a commissioned officer in the military or naval forces of the United States shall be excluded from gross income. The petitioner contends that his wife prepared his income tax return and included, through error, both his navy pay and allowances in reported gross receipts from his business. The petitioner's wife testified that she included bank deposits, cash receipts, and navy pay and allowances in petitioner's income tax return under gross receipts from business; and that sometime subsequent to 1944, she had no recollection of when, she discovered that she had made an "error" in including petitioner's navy pay and allowances in his income tax return. *277 Petitioner's income tax return for the year 1944 contains no mention of military compensation. The only gross income reported by the petitioner is disclosed under schedule C of the return (profit or loss from business or profession). No itemization of the total reported as gross receipts from business appears in the return, and none has been offered in evidence. Petitioner's wife testified that she had no recollection of the amount of navy compensation received by the petitioner in 1944. Petitioner testified that his navy pay and allowances in 1944 amounted to about $3,000. We are not given the specific amount of navy compensation received by petitioner and allegedly included in his reported gross income from business. The petitioner admitted that at the time he filed his income tax return for 1944, he was fully aware of the $1,500 exclusion from gross income applicable to military compensation; that he knew his navy allowances were not includible in gross income; and that as a navy officer he advised and instructed other navy personnel as to the $1,500 exclusion. He also admitted that he read and signed his income tax return. During his entire period of active duty with the Navy, *278 and at all times material hereto, the petitioner was stationed in the vicinity of Boston, Massachusetts, and was not separated from his wife. As an officer he was permitted to live away from his post of duty, and he and his wife occupied a room in the Statler Hotel in Boston. In view of these facts, the petitioner's contention that his navy compensation was included in his tax return under gross receipts from business through an "error" made by his wife in preparing the tax return, is patently weak. Furthermore, we have been given no reasonably convincing explanation as to how the petitioner or his wife discovered, during the course of the trial, that his navy compensation was included in his reported gross income. The petitioner did not keep adequate records reflecting either his business or personal income and expenditures. He has produced neither bank statements, work sheets, nor other memoranda from which his income tax return was prepared. The petitioner's claim to the $1,500 exclusion, and it is an exclusion and not a deduction from gross income, rests solely on the uncorroborated testimony of his wife. As we have already noted, her testimony on other issues has not always *279 been accurate or satisfactory, and it is not persuasive on this issue. The frequently quoted observation of the Supreme Court in Quock Ting v. United States, 140 U.S. 417, 420, appears appropriate here: "* * * There may be such an inherent improbability in the statements of a witness as to induce the court or jury to disregard his evidence, even in the absence of direct conflicting testimony. He may be contradicted by the facts he states as completely as by direct adverse testimony; and there may be so many omissions in his account of particular transactions, or of his own conduct, as to discredit his whole story." We are unable to find, as a fact, from the evidence and record before us that the petitioner's navy pay and allowances were included in gross income in his income tax return, and conclude that the petitioner is not entitled to an exclusion from gross income of $1,500 under section 22(b)(13)(A) of the Code. Addition to Tax Under Section 294(d)(2) of the Code. We have found as a fact that the amount of estimated tax, "none", as stated by petitioner on his declaration *280 of estimated tax for the year 1944, was less than 80 per cent of the tax due from the petitioner as herein determined for the year 1944. The petitioner has therefore substantially understated his estimated tax for the year 1944 and the 6 per cent addition to the tax provided by section 294(d)(2) of the Code should be added to the tax as herein determined. Addition to the Deficiency Under Section 293 (b), I.R.C. The remaining issue is whether any part of the deficiency is due to fraud with intent to evade tax under section 293(b) of the Code, or, in the alternative, to negligence under section 293(a) of the Code. The respondent by amended answer made claim for the addition to the tax at the trial. The Court, therefore, has jurisdiction under section 272(e) of the Code, to determine whether the addition to tax for fraud or negligence should be assessed against the petitioner. The statute, section 1112 of the Internal Revenue Code, places the burden of proving fraud upon the respondent. This he must do by clear and convincing evidence. Whether *281 or not respondent has sustained the burden of proving fraud is to be determined from the entire record and not merely from the affirmative evidence presented by him. L. Schepp Co., supra; Harry Feldman, supra.Because direct and clear cut proof of fraud is seldom available, it must be established by a full consideration of the records and testimony offered, the appearance and manner of the witnesses, the conduct of the taxpayer, and all the conditions and circumstances surrounding the disputed transactions. Wallace H. Petit, 10 T.C. 1253, 1257. See, also, Charles E. Mitchell, 32 B.T.A. 1093, affd. Helvering v. Mitchell, 303 U.S. 391; L. Schepp Co., supra; M. Rea Gano, supra.We are satisfied from all the evidence and the record in this proceeding that the respondent has discharged his burden of proof and has established in a convincing manner that part of the deficiency, as herein determined, is due to fraud with intent to evade tax. The petitioner took very large amounts of deductions in his 1944 income tax return, the sum of which wiped out his gross income and had the effect of *282 showing in the return a net loss of $6,131.07. The taking of unallowable deductions may support a finding that part of a deficiency is due to fraud with intent to evade tax, depending upon all of the evidence. In John McKeon, 39 B.T.A. 813, 821, the following was stated: "* * * where a taxpayer claims the deduction from gross income of amounts which he has not paid or to which he clearly is not entitled and those deductions are made with the intention of understating his correct net income, the return is equally false and fraudulent." See, also: L. Schepp Co., supra; Allegheny Amusement Co., 37 B.T.A. 12; Globe, Inc., 28 B.T.A. 119. The petitioner claimed, inter alia, in his 1944 return, deductions of $4,672.50 for legal fees, and $4,034.51 for a net operating loss, a total of $8,707.01. In his original and amended petition, he alleged that the legal fees were paid during the taxable year in connection with the operation of his business. In his original petition, the petitioner alleged that respondent erred in disallowing the *283 net operating loss in the above amount. At the beginning of the trial of this proceeding, the petitioner's counsel advised the Court that he wished to withdraw the issue raised in the petition relating to the claimed deduction for legal fees, and that the petitioner abandoned the claim for deduction of a net operating loss. The petitioner, on brief, argues that the taking of these two deductions in the return for the taxable year cannot be considered in this proceeding as evidence of any intent to reduce taxable net income with intent to evade income tax. In making this argument, the petitioner errs. Under section 293(b), the so-called fraud penalty is added to the deficiency, if any part of the deficiency is due to fraud with intent to evade tax. The "deficiency" referred to in section 293(b) consists of the difference between the tax liability and the amount shown in the original return. Maitland A. Wilson, 7 T.C. 395; Herbert Eck, 16 T.C. 511; Aaron Hirschman, 12 T.C. 1223, 1229, 1230; Harry Sherin, 13 T.C. 221, 229; Middleton v. Commissioner, 200 Fed. (2d) 94; *284 and George M. Still, Inc., 19 T.C. 1072, (promulgated March 12, 1953). A taxpayer cannot eliminate the fraudulent elements from his original return, if they exist, by filing an amended return (which was not done here), or by subsequently abandoning deductions which were taken in his original return. Respondent, therefore, properly has argued that the Court may give consideration to the two deductions which were taken in the return, which petitioner subsequently, upon trial, abandoned. At the outset, the facts relating to the extent of the unsubstantiated deductions which were taken by the petitioner in his original return should be summarized. They are as follows: The petitioner took in his return deductions totaling $32,512.78 which resulted in a loss for 1944 of $6,131.17. The respondent allowed upon audit of the return deductions in the amount of $7,374.38, and at the trial of this proceeding he conceded that of the deductions taken in the return which he had disallowed, $3,088.85, additional, is deductible, bringing the allowable deductions taken in the return to a total of $10,463.23, and reducing the disallowed deductions to $22,049.55. At the trial of this *285 proceeding the petitioner abandoned deductions taken in his return for alleged legal fees, net operating loss, and hotel and travel expenses in the total amount of $16,232.80, leaving at issue, out of deductions taken in the return, claimed deductions for alleged expenses and depreciation in the amount of $5,816.75. Under the issues presented, it has been held that petitioner's evidence establishes that he is entitled to deductions of only $520.70 out of the above, and that he has failed to prove that he is entitled to deductions in the amount of $5,296.05. Therefore, petitioner took deductions in his return in the total amount of $21,528.85 ($16,232.80, plus $5,296.05), which he has failed to substantiate. He also claimed in his petition to this Court, additional deductions for alleged bad debt losses in the amount of $3,236.25, which we have denied, but under the present issue, the question relates to the deficiency determined on the basis of the return filed. With respect to the deductions taken in the return, the petitioner has been unable to substantiate the basis for alleged depreciation allowances in large amounts, and that alleged expenditures were made for the purposes stated *286 in the return. The question under this issue is whether the petitioner took any of the unsubstantiated deductions from gross income in his return with the intention of understating his correct net income. We have carefully considered and weighed all of the evidence, and reach the conclusion that upon all of the record before us, the petitioner had the fraudulent intent of understating his correct net income in his return by taking excessive, unsubstantiated deductions. The petitioner is not a taxpayer who could fail to understand the requirements of, and his duty under, the revenue statutes to maintain adequate records and to deal honestly and fairly with the Government. The record before us is not one of "isolated instances of discrepancy or occasional lapses from the rigid accountability contemplated by the law." The petitioner has not merely claimed deductions for business expenses which he honestly but mistakenly thought were incurred in the taxable year. The petitioner failed to keep adequate records in the regular course of business. We have been given no reasonably convincing explanation as to how the amounts of many of the items claimed as deductions on petitioner's income *287 tax return were ascertained. Explanations offered by the petitioner varied. His sworn statements in his income tax return, in his petition, and in amendments thereto, in some instances conflicted with his oral testimony. In at least one instance a claimed deduction was shown to be fictitious. The record as a whole compels us to the conclusion that the petitioner deliberately pursued a course of conduct calculated to evade taxes. The petitioner is a certified public accountant. With the exception of a period of military service beginning in March 1944, the petitioner has been actively engaged in the practice of his profession. He freely admits that prior to 1944 he both studied and taught courses in federal taxation. A large part of his income was derived from preparing federal income tax returns for clients. The petitioner's wife, who was actively associated with him in his business and who allegedly prepared his income tax return for 1944, is a former deputy collector in the Bureau of Internal Revenue. Under these circumstances the petitioner's failure to keep adequate books and records in the regular course of his business, since its inception in 1939, as required by section 54 of the Internal Revenue Code *288 , and Regulations 111, sec. 29.54-1 is inexcusable and indicative of more than negligence. See Louis Halle, 7 T.C. 245, affd. 175 Fed. (2d) 500, certiorari denied, 338 U.S. 949. It is but a short step from gross negligence to fraud. M. Rea Gano, supra, and we are left with no doubt that the petitioner has taken the step. The following are illustrative: The petitioner's legal residence and principal place of business were located within the State of Illinois. At the time he filed his income tax return for 1944, petitioner was in the Navy and was stationed in the vicinity of Boston, Massachusetts, where he was living with his wife at the Statler Hotel. However, petitioner does not explain why, contrary to the provisions of sections 58(d)(2) and 53(b)(1) of the Internal Revenue Code, he filed both his declaration of estimated tax (in which he estimated his income and victory tax as "none") and his income tax return for 1944, with the collector for the second district of New York. As the respondent argues, there is a strong inference that the action of the petitioner in filing his 1944 income tax return in *289 a district other than the one where he resided and maintained his principal place of business is indicative of an intent to evade the regular examination of his return, in due course, by the respondent and the determination of his true tax liability. The petitioner admittedly reported net losses on each of his income tax returns for the years 1939 to 1944, inclusive, but offers no explanation as to the source of funds with which he allegedly purchased, during the same years, depreciable property allegedly used in his business at an alleged cost to him of $18,000. The petitioner in his income tax return for 1944 claimed a net operating loss deduction of $4,034.51 which was disallowed by the respondent. But neither the petitioner nor his wife could explain how the net operating loss was determined, or, in what year, if any, the alleged loss was sustained, or whether it represented a carry-over or carry-back of allowable net operating loss. The petitioner, in his income tax return for 1944 and in the original and amended petition filed in this proceeding claimed a deduction, as an ordinary and necessary business expense, of $4,672.50 for legal and accounting fees allegedly paid *290 by him during the taxable year. The deduction for legal fees was disallowed by the respondent. The petitioner, in support of the deduction claimed in his return for legal fees, submitted to the Bureau of Internal Revenue a schedule purporting to show the date, the recipients, and the amounts of the legal fees allegedly paid by him in 1944 in connection with his business. In the schedule the sum of $4,672.50 was claimed as a deduction, and of that amount, $4,362.50 was listed as paid to S. S. DuHamel, one of the petitioner's counsel in this proceeding. The petitioner contended, in his discussions with representatives of the Bureau of Internal Revenue, that of the $4,362.50 allegedly paid to DuHamel in 1944, all but $25 was paid in cash. At the trial the petitioner waived his assignment of error with respect to the Commissioner's disallowance of the claimed deduction for legal fees. He did this with the knowledge that the records of DuHamel were under subpoena by the respondent. The petitioner testified that he waived the issue regarding legal fees because of "the difficulty of proof" resulting from "errors in payments to Mr. DuHamel between the years '44 and '43." When asked whether *291 he paid the fees in question to DuHamel in either 1943 or 1944, he replied, "I don't know." His answer to practically every question concerning the item of alleged legal fees was resolved into, "I don't know," or "I don't recall." When the petitioner's wife was questioned during the trial of this proceeding about the deduction taken in petitioner's return for legal fees, she testified that she was unable to locate in her files of cancelled checks, memoranda, and other "records", evidence of payment in 1944 of the alleged legal fees to DuHamel. She testified that the deduction in the 1944 return of the alleged payment of legal fees was an "error." She had no recollection as to when she discovered the "error." She could not explain why the absence of cancelled checks indicated to her that the claimed deduction for legal fees which petitioner had alleged to representatives of the Bureau of Internal Revenue, had allegedly paid in cash indicated that the deduction was an "error." The testimony of the petitioner and his wife regarding the item of alleged legal fees claimed as a deduction on the petitioner's income tax return is neither convincing nor plausible. The petitioner's proffered *292 excuse that he was in the Navy and that his wife made errors in preparing his income tax return is patently weak because he also testified that he read and signed his return. Furthermore, throughout the period petitioner was on active duty in the Navy, he was stationed in the vicinity of Boston, Massachusetts, and he was accompanied by his wife. We can reach no other conclusion than that the petitioner knowingly claimed in his 1944 return, grossly excessive or fictitious deductions from gross income and that the return was fraudulent. John McKeon, supra. Upon consideration of all of the evidence and record, it has been found that part of the deficiency for 1944 was due to fraud with intent to evade tax. The amount of the deficiency and the addition thereto under section 293(b) will be recomputed under Rule 50. Decision will be entered under Rule 50. Footnotes
1. Two items totaling $30 were evidenced by checks payable to cash; one item for $10 by a check payable to petitioner's sister-in-law, allegedly for services rendered; and two items totaling $55.50 by checks payable to petitioner's father-in-law, allegedly as reimbursement for postage, express charges, and insurance on office equipment paid by him, although petitioner claimed in his return and the respondent allowed substantial deductions for both postage expense and express charges. An expenditure of $135 for membership in a Boston health club was also claimed by petitioner as a tax and business service expense.↩
2. Among other evidence offered were four checks payable to cash and two checks payable to petitioner's wife, totaling $62.23, none of which was supported by invoices or receipted bills; two checks totaling $39.90, payable to men's furnishings shops, of which sum $36.15 was claimed as a deduction allegedly for Christmas presents for employees; a check for $23.36 which petitioner's wife testified was for express charges, although petitioner claimed in his return, and the respondent allowed, a deduction of $120.19 for express charges; an undated invoice for $28.79, which does not identify the purchaser, from a camera shop for two rolls of film and one "as is" case which the petitioner's wife testified she used for a brief case, although petitioner claims depreciation on no fewer than 19 brief cases allegedly costing $320; and two checks totaling $16.06 payable to a Springfield, Illinois, meat and grocery market which were allegedly issued to pay for pencils and pads.↩
3. The only documentary evidence offered was an unitemized statement from Remington Rand, dated August 8, 1940, showing a balance due from petitioner of $240.85.↩