*Decision will be entered under Rule 50.*

JOHN MCKEON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 85516. Promulgated April 21, 1939.

*Laurence L. Cassidy, Esq.,* for the petitioner.
*George R. Sherriff, Esq.,* for the respondent.

OPINION.

SMITH: The petitioner is an unmarried man residing at the Biltmore Hotel, New York City. He filed an income tax return for 1931 in which he reported a gross income of $314,434.61, deductions of $213,854.77, and a net loss from the prior year of $63,328.40, leaving a net taxable income of $37,251.44. The tax reported as due on the return was $2,424.59.

The respondent has determined a deficiency against the petitioner for 1931 of $43,248.49 and a 50 percent fraud penalty under section 293 (b) of the Revenue Act of 1928 in the amount of $21,624.25.

In petitioner's income tax return the principal income items listed were:

| | |
|---|---|
| Salaries, wages, commissions, etc., from Paramount Famous Players | $23,618.90 |
| Profits in trading account with Sisto & Co., 67 Wall Street, New York City | 284,853.60 |
| Profits on joint account known as Sisto-McKeon | 27,646.51 |

Among the principal deductions claimed in the return were:

| | |
|---|---|
| Interest paid to Sisto & Co | $16,540.77 |
| Bad debts | 25,439.00 |
| Loss on operation of racing stable in Paris, France | 23,000.00 |
| Other deductions | 170,000.00 |

In his deficiency notice the respondent made the following adjustments in computing petitioner's net income:

Add:

1. Interest received _____ $15.91
2. Loss on race horses disallowed _____ 23,000.00
3. Bad debts disallowed _____ 21,700.00
4. Other deductions disallowed _____ 110,089.53
5. Commission received _____ 20,000.00

Adjusted net income was shown as $275,385.28. Respondent allowed the deduction of a 1930 net loss of $56,657.40.

Following are shown the several items claimed by the petitioner in his return under "Other Deductions":

| | |
|---|---:|
| Telephones, telegrams, cables, etc. | $3,000 |
| One-half rent at Hotel Biltmore, New York City | 2,650 |
| Clerical hire, commissions, etc., paid in United States | 25,000 |
| Clerical hire, commissions, etc., paid abroad | 13,050 |
| Entertainment and miscellaneous expenses | 30,000 |
| Salary for secretary | 12,000 |
| Legal fees in United States | 7,500 |
| Legal fees abroad | 15,000 |
| Automobile expense | 1,200 |
| Chauffeur | 2,600 |
| Gambling losses | 58,000 |
| Total | 170,000 |

In his deficiency notice the respondent allowed $59,910.47 and disallowed the balance, $110,089.53, under "Other Deductions." The items allowed by the respondent were as follows:

| | |
|---|---:|
| Telephone, telegrams and hotel expense | $3,000.00 |
| Entertaining expense | 534.84 |
| Payments to F. A. Dinneen and Harry Norris | 10,700.00 |
| Salary of secretary | 1,820.00 |
| Legal fees | 2,500.00 |
| Gambling losses | 41,355.63 |
| Total | 59,910.47 |

Petitioner alleges in his petition that the respondent erred generally in determining the deficiency and the fraud penalty and that he erred specifically in making each of the above adjustments shown in the deficiency notice, except as to the inclusion in gross income of the item of $15.91 additional interest received.

As a basis for the assessment of the fraud penalty the respondent alleges in his answer that the petitioner in his 1931 return described his occupation as "broker", whereas he was a mere trader in securities and not a broker; that the petitioner in his return claimed the deduction of $23,000 as a loss on the business of raising and developing race horses in France, whereas the petitioner sustained no such

loss; that the petitioner in his return claimed the deduction of certain bad debts amounting in the aggregate to $25,439, whereas "the petitioner not only is unable to show that these alleged debts became uncollectible in 1931, but is even unable to show that he ever made any such loans to the persons named" and that the claim for the deduction was fraudulent with intent to evade tax; that in his return the petitioner claimed under "Other Deductions" certain excessive deductions, that is, in excess of the deductions allowed by the Commissioner in his deficiency notice, for losses which he did not sustain and for ordinary and necessary expenses which he did not incur; that in computing the amount of his claimed 1930 net loss of $63,328.40 carried forward to 1931 the petitioner failed to include in his 1930 income an item of $20,000 which he received in that year as compensation for services in negotiating the sale of certain shares of Warner Brothers Pictures, Inc., stock for the estate of Jules E. Mastbaum; and that in his return for 1931 the petitioner claimed a personal exemption of $3,500 and a credit for dependents of $800, whereas petitioner in 1931 was not a married man, was not the head of a family, and had no dependents.

We shall first consider the computation of the correct tax liability, upon which the burden of proof is upon the petitioner.

The petitioner did not appear at the hearing. In attempting to prove that the petitioner was entitled to many of the deductions claimed his attorney relied principally upon the testimony of an internal revenue agent who had made an examination of the petitioner's records for the purpose of verifying the return. The revenue agent was handicapped in his investigation by the fact that the petitioner kept no books of account. The only records available were check book stubs, canceled checks, and correspondence contained in the petioner's files, supplemented by testimony of the petitioner's attorney. As will be noted from the return, the petitioner claimed under "Other Deductions" $170,000, of which the respondent allowed the deduction of only $59,910.47. Out of the $170,000 "Other Deductions" claimed the revenue agent found total payments made in the amount of $84,072.86. The respondent did not accept as deductible items all of the payments found by the revenue agent.

As to what the petitioner's activities were in 1931 is shrouded in much mystery. On his return he stated his business as that of "broker." The attorney for the petitioner testified that in prior years the petitioner had been a "theatrical broker" and the designation of "broker" was used in the 1931 return as characterizing the petitioner's business, but it appears from the evidence that the petitioner was simply a trader in securities in 1931 and had other activities from which he received compensation from Paramount Famous Players

Lasky Corporation of $23,618.90. The petitioner had an account with Sisto & Co. as brokers and made large profits from short sales of securities in that account in 1931. He also had an account with the brokers under the name of Sisto-McKeon. This was a joint account and the petitioner had profits from this account in 1931 of $27,646.51.

Although the petitioner had no office with Paramount Famous Players Lasky Corporation and was not on the pay rolls of that corporation as an employee, he nevertheless performed some service for the corporation in securing the cooperation of public officials whose assistance was necessary in connection with the construction of a marquee for the Paramount Theatre Building in New York City.

The gross income returned by the petitioner for 1931 has been increased by the respondent in the amount of $15.91, which increase is not questioned, and also by the amount of $20,000 representing "Commission received." Upon the basis of the evidence the respondent does not now claim that the gross income returned should be increased in the amount of $20,000, but he does claim that the net loss brought forward from 1930 and allowed as a deduction from gross income for 1931 in the amount of $56,657.40 should be reduced to $36,657.40 by reason of the fact that the petitioner received, as contended by the respondent, compensation for services rendered in 1930 in the amount of $20,000.

At this point it may be stated that there is no evidence before the Board that the petitioner carried on a regular trade or business in 1931 which would warrant the bringing forward of any net loss for 1930. But the respondent has allowed the deduction of a net loss brought forward in the amount of $56,657.40 and the respondent does not contend that the petitioner is not entitled to deduct from his gross income of 1931 any net loss which the petitioner may have sustained for 1930. He seeks only to reduce the amount of the net loss of 1930 from $56,657.40 to $36,657.40.

Briefly stated, the facts bearing upon this issue are as follows: Sometime near the close of 1928 the executors of the estate of Jules E. Mastbaum, deceased, one of whom was the decedent's widow, obtained the petitioner's assistance in disposing of some shares of Warner Brothers Pictures, Inc., preferred stock, of which the estate held a large block. Because of the petitioner's close friendship with the Mastbaum family he did not ask for and did not expect any compensation for the services which he rendered. In 1929, however, Mrs. Mastbaum and the other executor, Morris Wolf, feeling that the petitioner should receive compensation from the estate for the services which he had rendered, mailed the petitioner a check for $2,500 with the following letter dated April 19, 1929:

Dear Jack:

At Etta's suggestion, and with my entire acquiescence, I am enclosing check of the Estate for $2500, as a slight evidence of our appreciation of your help in connection with the sale of the stock of Warner Brothers Pictures, Inc.

> Very truly yours,

MW/B
Enc.
Mr. John McKeon
1560 Broadway,
New York City, N. Y.

On April 22, 1929, petitioner returned the check to Morris Wolf with the following letter:

Dear Morris:

I am returning to you check which you and Etta so kindly sent me.

I have thought this matter over and I cannot see where I am in any way entitled to compensation from the Jules E. Mastbaum Estate.

Thanking both you and Etta for your expressions of appreciation, I am,

> Very truly yours,

> [Signed]   J. J. McKeon

Mr. Morris Wolf,
Estate of Jules E. Mastbaum
#1204 Packard Building,
Philadelphia, Pa.

In the following year, 1930, the executors again asked the petitioner to assist them in disposing of an additional lot of shares of the same stock, which the petitioner did. This transaction involved 16,000 shares and amounted to about $1,000,000. The sale of the shares was made in April 1930. There was no agreement about any compensation to be paid to the petitioner and no mention of the matter was made by any of the parties at the time. About two months later, however, Mrs. Mastbaum told her coexecutor that she had talked the matter over with her children and that even though the petitioner had said that he did not want anything for his services they would not feel comfortable unless a payment was at least offered to him. Accordingly, the executors tendered the petitioner payment of $20,000 and the petitioner accepted the amount. The executor, Morris Wolf, who is an attorney of long standing, testified that he considered the estate under no legal obligation to make the payment, but that it was done purely as a matter of satisfaction to Mrs. Mastbaum and others of the family and himself.

In the income tax return filed on behalf of the Mastbaum estate for 1930, which was prepared by a firm of accountants, the item of $20,000 paid to the petitioner as set forth above was deducted from the amount realized upon the sale of the shares of Warner Brothers Pictures, Inc., stock. The return in question showed a large net loss without benefit of the deduction of the $20,000.

The above facts show, we think, that the payment of the $20,000

to the petitioner by the executors of the Mastbaum estate in 1930 was purely gratuitous. There was no contract or understanding of any kind that the petitioner would be compensated for his services and apparently there was no binding obligation on the estate to pay. As said in *Earl S. Gwin*, 14 B. T. A. 393, 407, "Payments gratuitously made, though on account of some past act or service, do not constitute taxable income." Also, in *Herman T. Dietrich*, 6 B. T. A. 1371, we said:

There was never any charge made by petitioner for any information or counsel he gave or any service he rendered the Bruners or either of them, nor was there any promise made or any assurance, express or implied, given him that he would be paid or compensated for what he did for them. The 216 shares of stock issued to petitioner were an absolute gift, which was made or prompted by the feeling of moral obligation and high sense of appreciation on John W. Bruner's part, for the kind and valuable services rendered him and his son by a genuine friend.

The fact that petitioner's friendship, suggestions, and services were beneficial to the Bruners does not convert what was clearly a *bona fide* gift to petitioner into compensation for such services so as to make the amount of the gift income, taxable under the statute.

See also *Bogardus* v. *Commissioner*, 302 U. S. 34; *Jones* v. *Commissioner*, 31 Fed. (2d) 755; *Blair* v. *Rosseter*, 32 Fed. (2d) 286. Cf. *Alford J. Williams, Jr.*, 29 B. T. A. 892, where the taxpayer was held taxable on the receipt of commissions on a sale of real estate which he demanded and threatened to sue for.

Upon the evidence the Board is of the opinion that the respondent erred in increasing the petitioner's gross income for 1931 in the amount of $20,000 and that the net loss allowed by the respondent in the determination of the deficiency for 1931 in the amount of $56,657.40 should not be reduced.

In his income tax return the petitioner claimed the deduction from gross income of $23,000 with the following explanation:

SCHEDULE "A"

The taxpayer during the year 1931 conducted a separate business in Paris, France, which consisted of the purchase, sale, rearing and development of race horses. None of these horses were sold during the year 1931 but certain of them earned income totaling_____ $8,000.00

In connection with the conduct of this business, the taxpayer sustained a substantial loss due to the following expenses:

Training, boarding, veterinarian hire and incidental expenses _____ $17,500.00

Hire of personnel incident to maintenance of stables__ 7,500.00

Transportation and travel expenses_____ 6,000.00

Total expenses_____ 31,000.00

Net Loss_____ $23,000.00

The facts relating to the deduction of the claimed loss of $23,000 are involved in much obscurity. The evidence shows that the petitioner actually made payments to persons in France connected with horse racing. Whether this was a business transaction which would entitle the petitioner upon proof of the amount of the loss, if any, to deduct any loss sustained on the transaction is doubtful. There is no proof whatever that the petitioner operated the racing stable as a business enterprise or for the purpose of profit. It is not in evidence as to whether the racing stable, if one was operated, was entirely closed out in 1931, although it appears that a bank account from which the payments were made was closed out in that year. There is no evidence that the respondent improperly disallowed the claimed loss of $23,000.

In his income tax return the petitioner claimed the deduction for bad debts of $25,439. The respondent has disallowed the deduction of $21,700 representing claimed loans to persons residing in France. There is no evidence to show that the petitioner is entitled to deduct from gross income the bad debts disallowed in the amount of $21,700.

In his return the petitioner claimed the deduction from gross income of "Other Deductions" in the amount of $170,000 and the respondent has disallowed the deduction of $110,089.53 of this amount. There is no evidence in the record that the petitioner is entitled to deduct any part of the amounts disallowed by the respondent in the amount of $110,089.53. Included in the $170,000 "Other Deductions" is the following:

Entertainment for business representing many detailed items which is impossible for the taxpayer to record in detail but which generally include expenditures in meeting and entertaining various persons whose contact it is necessary for the taxpayer to maintain in connection with the conduct of his activities, including luncheons, dinners, gifts and miscellaneous expenses, which it is estimated are not less than $2,500 per month_____ $30,000.00

Of this amount the respondent has allowed the deduction of $534.84. Although it would appear from the findings of the revenue agent that $14,093.79 of the claimed amount was paid, there is no evidence which would show that the petitioner was entitled to deduct any greater amount than allowed ($534.84) as ordinary and necessary expenses of carrying on any trade or business. For lack of proof the determination of the respondent that the entertainment expense deduction in excess of $534.84 is not a legal deduction from gross income is approved.

The petitioner also claimed the deduction from gross income, in "Other Deductions": Automobile expense $100 per month, $1,200; and chauffeur $50 per week, $2,600.

There is no evidence that the petitioner was entitled to deduct these expenses as ordinary and necessary expenses of carrying on any trade or business.

The petitioner also deducted from gross income the following: "Irene L. Dayton, Secretarial hire, $12,000.00." The revenue agent found that the actual salary paid to Irene L. Dayton was $1,820 and no more. There is no evidence that any greater amount was paid to Irene L. Dayton, or to any other person, for secretarial services.

Included in the "Other Deductions" also are gambling losses of $58,000. This is described in the return as follows:

Loss on gambling and like transactions entered into by the taxpayer for profit in the States of Florida, Maryland, Kentucky and New Jersey and abroad. Such transactions under the laws of those jurisdictions are held to be legal_____ $58,000.00

The revenue agent found that $41,355.63 had actually been paid and the respondent has allowed the deduction of that amount as gambling losses. There is no evidence that the gambling losses disallowed in the amount of $16,644.37 were actually paid, that the gambling transactions were entered into for profit, or that any part of the gambling losses claimed constitute legal deductions from gross income. The disallowance of the gambling losses in the amount of $16,644.37 is approved.

A careful weighing of all of the evidence in this case convinces the Board that the disallowance of the "Other Deductions" by the respondent in the amount of $110,089.53 was proper.

In his return the petitioner claimed personal exemption and credit for dependents in the amount of $4,300. In such return he stated that he was married and living with his wife and that he was the chief support of two dependents. The evidence clearly shows that the petitioner was not a married man and that he lived alone in his suite at the Biltmore Hotel. There is no evidence that the petitioner was the chief support of any dependents anywhere.

The respondent contends that the income tax return filed by the petitioner for 1931 was false and fraudulent with intent to evade tax within the meaning of section 293 (b) of the Revenue Act of 1928, which provides, so far as material, as follows:

(b) *Fraud.*—If any part of any deficiency is due to fraud with intent to evade tax, then 50 per centum of the total amount of the deficiency (in addition to such deficiency) shall be so assessed, collected, and paid, in lieu of the 50 per centum addition to the tax provided in section 3176 of the Revised Statutes, as amended.

Section 907 (a) of the Revenue Act of 1924, as amended by section 601 of the Revenue Act of 1928, provides:

\* \* \* In any proceeding involving the issue whether the petitioner has been guilty of fraud with intent to evade tax, where no hearing has been held before the enactment of the Revenue Act of 1928, the burden of proof in respect of such issue shall be upon the Commissioner. \* \* \*

The question here is whether the evidence in this case sufficiently shows that the return was false and fraudulent with intent to evade tax. There can be no question that the net income shown in the return was grossly understated and that the petitioner claimed deductions from gross income which he was not entitled to take. If the gross income had been understated and the respondent had borne the burden of proof of showing that the petitioner had a larger gross income than he had reported, and the evidence indicated that the failure to disclose the full amount of the gross income was with intent to evade tax, there could be no question as to the incurrence of the fraud penalty. We think it is equally clear, however, that, where a taxpayer claims the deduction from gross income of amounts which he has not paid or to which he clearly is not entitled and those deductions are made with the intention of understating his correct net income, the return is equally false and fraudulent. See *L. Schepp Co.*, 25 B. T. A. 419.

From a consideration of all of the evidence in this case the only permissible inference is that the petitioner claimed deductions from gross income which he was in no wise entitled to claim. Thus, in his return he claimed the deduction of $12,000 after the title "Irene L. Dayton, Secretarial hire." The evidence is clear that the petitioner paid Irene L. Dayton a salary of only $1,820.

The evidence is equally clear that the petitioner claimed the benefit of a personal exemption as a married man or head of a family when he was in no wise entitled to such personal exemption and also claimed the credit for two dependents when he was not entitled to that credit. Since section 293 (b) of the Revenue Act of 1928 provides that "If any part of any deficiency is due to fraud with intent to evade tax" and since in our opinion the evidence conclusively shows that the petitioner made deductions from gross income to which he was not entitled, and falsely claimed the benefit of a personal exemption as a married man or the head of a family, we are of the opinion that the return was false and fraudulent and that the penalty provided for by section 293 (b) of the Revenue Act of 1928 was incurred.

*Judgment will be entered under Rule 50.*