ROBERT NEADERLAND, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 5942–66. Filed June 25, 1969.

*Carl F. Bauersfeld*, for the petitioner.
*Wallace Musoff* and *Marwin A. Batt*, for the respondent.

534

536

538

OPINION

The main issue before us is whether any part of petitioner's understatement of taxes for 1954 and 1955 was due to fraud with the intent to evade or defeat tax. We also must decide whether a business expense deduction in issue for each year is allowable in excess of the amounts already allowed. Unless there is fraud the statute of limitations will operate to bar the collection of any deficiencies. As will be seen later, the issue of fraud is decided for respondent, therefore, we will turn first to the issue concerning the business deductions to determine the extent of petitioner's tax liability for each year in issue.

Respondent determined deficiencies in petitioner's income tax in the amounts of $7,521.24 for 1954 and $14,611.56 for 1955. In arriving at these determinations he allowed $2,000 for each year as business expenses. This means petitioner has the burden of proving that he is entitled to more than $2,000 for each year as business expense deductions already allowed by respondent. He must overcome the presumption of correctness that attaches to respondent's determination. Rule 32, Tax Court Rules of Practice; *Welch* v. *Helvering*, 290 U.S. 111 (1933).

Petitioner claimed in his amended returns filed in 1962 that he is entitled to business deductions for each year in the amount of $12,176.33 for 1954 and in the amount of $17,909.13 for 1955. No substantive documentary evidence was offered to support these business deductions taken by petitioner in his amended returns.

In an attempt to substantiate his deductions petitioner testified in a general and conclusory manner that he had a considerable amount of business expenses in each year in issue. He referred to some specific real estate transactions he was involved in and customers he dealt with to show how his expenses arose stating that "I took customers to prize fights, I took them to ball games, I took them to shows. I took them to affairs. I took them to special dinners and I paid the bills." At no time did he match up any specific expense or amount with any specific person or place. When he was asked to substantiate his 1954 and 1955 expenses in 1957 by respondent's representative and then again at the trial he was unable to do it. He claimed that he had records but that they were lost. In reference to his alleged car expenses for business he testified that he "sometimes" recorded them on "pads," but at no time were any pads ever produced.

Evidently petitioner felt he could sustain his burden of proof by simply introducing into evidence canceled checks, bank statements, and a few receipts and testifying, generally, that his expenditures were for business purposes. This type of evidence in no way shows us for what purpose the expenditures were made. Other than his own general testimony he presented no records or proof of any substance as to the purpose for the expenditures he actually incurred. This kind of testimony does not provide a foundation for allowing disallowed expenses as "ordinary and necessary" business expenses.

Petitioner argues that pursuant to the decision in *Cohan* v. *Commissioner*, 39 F. 2d 540 (C.A. 2, 1930), he is entitled to an estimated allowance of business expenses for 1954 and 1955. This is true only when petitioner's evidence indicates and shows that he had in fact incurred *business* expenses in excess of the amount already allowed. That is not the case here. Petitioner has failed to show he is entitled to more than was allowed.

Petitioner's testimony and evidence for 1954 and 1955 were so general and of such a summary nature that we cannot conclude for either year that he has sustained his burden of proof. *Reginald G. Hearn*, 36 T.C. 672 (1961), affd. 309 F. 2d 431 (C.A. 9, 1962), certiorari denied 373 U.S. 909 (1963).

We now turn to the fraud issue under section 6653(b). On this issue, the burden of proof is on respondent to show that a part of the understatement of taxes for each year was due to fraud. He must, to sustain his burden, present clear and convincing evidence that petitioner knowingly understated his taxable income on his income tax return for each year with the specific purpose and intent of evading tax. Sec. 7454(a); *Charles E. Mitchell*, 32 B.T.A. 1093 (1935), affd. 303 U.S. 391 (1938); and *Arlette Coat Co.*, 14 T.C. 751 (1950).

Petitioner prepared his own 1954 and 1955 income tax returns and he took business deductions for each year in the respective amounts of

$31,000 and $38,000. He now has admitted by filing amended returns in 1962, and by pleading admission, and by stipulation, and on brief, that the $31,000 deduction for 1954 was excessive by at least $18,823.67 and that the $38,000 deduction for 1955 was excessive by at least $20,090.87. The large amount of these admitted overstatements tends to nullify any thought of honest error. We have also held that petitioner failed to prove that he was entitled to business deductions for each of those years in excess of the $2,000 allowed each year by respondent. In other words, petitioner has understated his taxable income by deliberately grossly overstating his deductions. There is no doubt that for purpose of fraud an understatement of taxes can be accomplished by an overstatement of deductions as well as by an omission of income. *John McKeon*, 39 B.T.A. 813 (1939), and *Estate of Louis L. Briden*, 11 T.C. 1095 (1948), affirmed sub nom. *Kirk* v. *Commissioner*, 179 F. 2d 619 (C.A. 1, 1950).

We are convinced that petitioner is a highly intelligent individual who was very successful in his field of endeavor. His earnings during the years involved were substantial, amounting to $60,073.31 for 1954 and $99,187.23 for 1955. His activities during the years in issue encompassed the sales and leases of parcels of realty which involved millions of dollars. In fact, he consummated somewhere near 16 million dollars' worth of real estate transactions in 1955 alone. It is a fair inference that petitioner, possessing the business acumen he undoubtedly possessed, could hardly have inadvertently overstated his business expense deductions to the extent that he did. It would be difficult to believe he could have honestly thought his business expenses in 1954 and 1955 were $31,000 and $38,000, respectively, when he filed his returns in view of his admission a few years later that his business expenses for said years were less than half of the reported amounts. We are convinced that he knew what he was doing when he filed the returns and his large overstatements of business expenses were with the willful intent to defeat and evade the tax. Cf. *Eugene Vassallo*, 23 T.C. 656 (1955) ; *Joseph H. Imeson*, 14 T.C. 1151 (1950) ; and *Luerana Pigman*, 31 T.C. 356 (1958).

Petitioner's explanation of the overstatements of deductions for each year is simply "honest mistake." He told a confusing story at the trial that he thought his W–2 forms supplied by Elliman for each year included in the "Total Wages" payments made to third-party lawyers and brokers who participated in his real estate transactions. He characterized these payments as "payments off the top" and said that, in some manner which is not clear, he used them in computing his business deductions for 1954 and 1955. This story about "payments off the top" seems to have been advanced for the first time at the trial and it is not consistent with what he had previously told respondent's representative and his own certified public accountant

during the investigation and audit of his 1954 and 1955 returns. While he mentioned "kickbacks" to them, he never fully explained what he meant and claimed his expenses to be moneys he had spent. Then, at the trial, he admitted that the "payments off the top" that he was referring to were payments made by his employer, Elliman, out of its own funds and not payments that he, himself, had made. His certified public accountant testified that petitioner told him in discussing his business deductions for each year in issue that "he thought he spent the money" and then later told him that "he had run several or many very costly parties and that he evidently figured that that was a pattern of living during those years, and he made no attempt to build up an amount for a deduction, but took a round figure in each year. That was something that he picked out of a hat." Petitioner also admitted that his descriptions of his business deductions on his 1954 and 1955 returns were inaccurate if his explanation at the trial was to be considered credible.

The inconsistencies that exist in petitioner's explanations and descriptions of his business deductions for each year in issue render his testimony unreliable and not persuasive. The story about the so-called payments off the top appears to be an afterthought, not fully developed until he was told by his accountant that he just could not have possibly had the expenses he claimed to have on his 1954 and 1955 returns.

Finally, petitioner's conduct throughout the investigation of both of his returns and on the witness stand was not the best. On more than one occasion respondent's representative had to contact petitioner when petitioner had agreed to contact him. He claimed to have records which he never produced and he was generally misleading. On the witness stand he was evasive and unresponsive to questions addressed to him by respondent's attorney. A failure to fully cooperate with respondent's representative, as here, is also indicative of fraud. Cf. *Jacob D. Farber*, 43 T.C. 407 (1965).

In view of all of the facts in this case we conclude that petitioner's underpayment of taxes for 1954 and 1955 was due, at least in part, to fraud with the intent to evade tax. We cannot believe that petitioner acted innocently and in good faith or that his large overstatements of business expenses were the result of honest mistake. Respondent has met his burden of proof. *Webb* v. *Commissioner*, 394 F. 2d 366 (C.A. 5, 1968), affirming a Memorandum Opinion of this Court.

Our finding of fraud disposes of the issue concerning the statute of limitations.

Petitioner amended his petition to allege that the respondent is estopped from raising the issue of fraud because the U.S. District Court, in a prior criminal tax evasion case for the same years, granted a motion for judgment of acquittal.

There is no merit in this argument. A judgment of acquittal based on a jury verdict in a criminal tax-evasion case does not work an estoppel in an action for fraud under section 6653(b) involving a civil liability. See *Helvering* v. *Mitchell*, 303 U.S. 391 (1938). The result is the same when the judgment of acquittal is based on a granted motion for judgment of acquittal. *United States* v. *Real Estate Boards*, 339 U.S. 485 (1950). See also 4 Barron & Holtzoff, Federal Practice & Procedure—Criminal, sec. 2221 (1951). Rule 29 of the Rules of Criminal Procedure provides the motion for judgment of acquittal should be sustained "if the evidence is insufficient to sustain a conviction." And the Supreme Court has held in *American Tobacco Co.* v. *United States*, 328 U.S. 781, 787 fn. 4 (1946), that: "The verdict in a criminal case is sustained only when there is 'relevant evidence from which the jury could properly find or infer, beyond a reasonable doubt,' that the accused is guilty."

Petitioner, relying on *United States* v. *Feinberg*, 140 F. 2d 592 (C.A. 2, 1944), contends that the standard of proof used in a criminal case in the Second Circuit by the Federal courts for ruling on a motion for judgment of acquittal requires no more proof or no higher degree of proof than the standard applicable in a civil case. Petitioner seems to admit that in most other circuits the court must grant the motion for acquittal if the judge reasonably thinks that the evidence for conviction does not meet what can be called the "beyond a reasonable doubt" test. His argument is that in the Second Circuit because of statements in the *Feinberg* case the court must grant the motion for acquittal if the judge reasonably thinks that the evidence for conviction does not meet the "preponderance" test or the same standard required in a civil case. Based on this rule, which petitioner says exists in the Second Circuit, petitioner argues the judgment of acquittal in the criminal case for tax evasion rests on a finding of lack of preponderance of evidence, the same or a lesser quantum of proof required in the instant case and therefore respondent is estopped by the judgment in the criminal case from asserting fraud in this case.

Petitioner attempts to distinguish *United States* v. *Real Estate Boards*, *supra*, by pointing out this was an appeal from the District of Columbia District Court where the standard of proof to be applied in considering a motion for directed verdict of acquittal is the sufficiency of the evidence to overcome any reasonable doubt as to defendant's guilt. He contends the case is not authority for respondent here where the trial was governed by the preponderance-of-evidence rule of the Second Circuit. But neither the opinion of the District Court nor of the Supreme Court indicates the standard of proof required or applied in the consideration of the motion for acquittal.

It must be admitted that an evenhanded application of the law of estoppel would seem to call for the estoppel preclusion if the first judg-

ment in the earlier case rests on no higher degree of proof than the standard applicable here in this civil case. But we are not convinced there is a real difference between the general rule and the rule that is actually being applied in the Second Circuit with respect to the quantum of proof necessary to defeat a motion for judgment of acquittal in a criminal case. *United States* v. *Melillo*, 275 F. Supp. 314 (E.D.N.Y. 1967) ; 8 Moore, Federal Practice, par. 29. In the last-cited text the author reviews the proof-requirement rule of the Second Circuit that the trial court must apply in passing upon a motion for acquittal and the general rule applied in other circuits. Much authority is cited to show there is probably no substantive difference between the two rules. The author goes on to state:

> Assuming that there is some substantive difference between the two rules, which is by no means clear, it is doubtful whether the use of one as opposed to the other will materially affect the decision in a given case. * * *
>
> \*       \*       \*       \*       \*       \*       \*
>
> It is difficult to conceive of a judge who has ever tried a criminal case, or sentenced a defendant, as being unaware of the qualitative difference between criminal and civil cases.[22] It is equally difficult to imagine that the Second Circuit rule was intended to obliterate the difference between the degree of proof required in civil and criminal cases.[23] [Footnotes omitted.]

In *United States* v. *Melillo*, *supra*, the court stated: "The question of how much evidence is required to allow a criminal case to go to the jury 'is not entirely free from doubt' in this circuit." However, after reviewing a number of cases the court said that "The rule laid down in the *Feinberg* case appears to have lost its vitality." The court then went on to apply the reasonable-doubt test to a motion for judgment of acquittal in a criminal case.

There is no use discussing all of the other cases in the Second Circuit where mention is made as to the quantum of proof necessary to defeat a motion for acquittal. They are not cases involving estoppel. We agree with the statement of the court in *United States* v. *Melillo*, *supra* at 318, 319:

> Apart from authority, experience and policy, the language of the Rules of Criminal and Civil Procedure require the court to apply a higher standard in criminal than in civil cases. On the one hand, the motion for a directed verdict, pursuant to Rule 50 of the Civil Rules, or for an involuntary dismissal under Rule 41(b) of the Civil Rules must be granted in the run-of-the-mill civil case if a reasonable juror cannot find it more probable than not that the proponent has established his case. On the other hand, Rule 29 of the Criminal Rules requires the court to grant a motion for judgment of acquittal "if the evidence is insufficient to sustain a conviction". It is insufficient, the Supreme Court has told us in *American Tobacco*, if a reasonable juror would have to entertain a reasonable doubt about defendant's guilt. Thus, even if the courts wished to use the same standards in civil and criminal cases, the rules preclude them from doing so.

We are of the opinion that the judgment of acquittal in the criminal case based on section 7201 does not work an estoppel against respondent in this civil case based on section 6653.

544

We hold that respondent was correct in his determination of deficiencies for 1954 and 1955; petitioner's underpayment of taxes for each of those years was due, at least in part, to fraud with intent to evade tax, and additions to tax for fraud were properly imposed and respondent is not estopped from raising the issue of fraud by a judgment of acquittal in a prior criminal case for tax evasion for the same years.

*Decision will be entered for the respondent.*