JOSEPH GREEN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Green v. Commissioner
Docket No. 8029-80.
United States Tax Court
T.C. Memo 1981-577; 1981 Tax Ct. Memo LEXIS 179; 42 T.C.M. (CCH) 1330; T.C.M. (RIA) 81577; September 30, 1981. *179 For the years 1971 through 1975 petitioner prepared income tax returns for himself and his wife under the status of married, filing separately. In computing his and his wife's taxable income, petitioner duplicated certain deductions on the two returns. Held, petitioner is liable for additions to tax for fraud under sec. 6653(b), I.R.C. 1954, for the taxable years 1971 through 1974. Jerome S. Richman, Edward P. Guttenmacher, Brian K. Ziegler, Neal E. Farr, and Michael S. Cease, for the petitioner. Theodore F. Brill, for the respondent. STERRETT
MEMORANDUM FINDINGS OF FACT AND OPINION STERRETT, Judge: By notice of deficiency dated February 26, 1980 respondent determined the following deficiencies in petitioner's Federal income taxes and additions to tax for fraud under section 6653(b), I.R. *180 C. 1954: Addition to tax under
Year
Deficiency
sec. 6653(b)
1971
406.97
203.48
1972
547.13
273.56
1973
582.30
291.15
1974
668.78
334.39
1975
602.92
301.46
After concessions, the sole issue for our decision is whether the petitioner is liable for the additions to tax for fraud under section 6653(b) for the years 1971 through 1974. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. Petitioner Joseph Green resided in Tallahassee, Florida at the time of filing the petition herein. He filed individual Federal income tax returns for the taxable years at issue with the Internal Revenue Service Center at Chamblee, Georgia. For the years 1971 through 1975 petitioner prepared income tax returns for himself and his wife, Betty Green, under the status of married, filing separately. In computing his and his wife's taxable income, petitioner duplicated certain deductions on the two returns. The following chart for the year 1971 shows the deductions claimed on the return of Joseph Green, the deductions claimed on the return *181 of Betty Green, and the total amounts paid for each item by Joseph and Betty Green, jointly: Total amount paid
Claimed deduction on
Claimed deduction on
by Joseph and
Item
return of Joseph Green
return of Betty Green
Betty Green
Real estate
taxes to Dade
County, Fla.
$ 272.35
$ 272.35
$ 261.44
Home mortgage
interest
374.47
374.47
374.47
Automobile
license tags
51.50
51.50
51.50
The following chart contains the comparable information for the year 1972: Total amount paid
Claimed deduction on
Claimed deduction on
by Joseph and
Item
return of Joseph Green
return of Betty Green
Betty Green
Real estate
taxes to Dade
County, Fla.
$ 299.00
$ 264.18
$ 253.62
The following chart contains the comparable information for the year 1973: Total amount paid
Claimed deduction on
Claimed deduction on
by Joseph and
Item
return of Joseph Green
return of Betty Green
Betty Green
Real estate
taxes to Dade
County, Fla.
$ 272.83
$ 272.83
$ 272.82
Taxes on personal
property
5.86
5.86
5.86
Home mortgage
interest
374.19
374.19
404.68
The following chart contains *182 the comparable information for the year 1974: Total amount paid
Claimed deduction on
Claimed deduction on
by Joseph and
Item
return of Joseph Green
return of Betty Green
Betty Green
Real estate
$ 361.87
$ 361.87
$ 347.40
Taxes to Dade
County, Fla.
State taxes
41.10
41.10
Electricity
taxes
60.00
50.00
Telephone service
taxes
60.00
50.00
Home mortgage
interest
375.00
375.00
353.87
Rental charge
on safe deposit box
12.50
12.50
12.50
Additional sales
taxes
186.75
186.75
Real estate
taxes on 2 lots
in St. Lucie
County, Fla.
37.48
With respect to some of the items above, there was no evidence presented of the amount in fact paid by Joseph and Betty Green. Petitioner was employed as a revenue officer with the United States Treasury Department, Internal Revenue Service, Collection Division, from July 1, 1957 until November 19, 1976. By that time, he had attained a classification of GS-12 (hereinafter Grade 12). Such position was attained by application, evaluation and a competitive selection process. Petitioner's evaluation included a report filed by his supervisor, Ralph Delgado, which placed petitioner *183 on a list of best qualified. Grade 12 is the highest grade attainable by a nonsupervisory revenue officer. A revenue officer reaching such classification is given the more complex cases in the Collection Division and is expected to possess expertise sufficient to handle any case that comes into the Collection Division. One of petitioner's duties as a revenue officer was to assist taxpayers who did not file timely income tax returns. In such cases, if the taxpayer appeared with his records, the revenue officer would help him prepare the return. This required, to some extent, the knowledge and utilization of substantive tax law, including a working knowledge of itemized deductions. Revenue officers therefore could take tax training either by correspondence or classroom courses. In addition, copies of the Internal Revenue Code, Master Tax Guide, IRS Publication 17 and other publications and tax reports were available in the office to help maintain the knowledge of revenue officers and to help them keep up with new developments. Petitioner earned a bachelor's degree from a university, in New York, where he majored in real estate and minored in insurance. Among the courses taken *184 by petitioner in college and with the IRS were 3 courses in accounting as well as courses in financial management, evidence and procedure. Around April 15 of each year, revenue officers were reminded by their superiors at the IRS of their responsibility to file timely and accurate tax returns. During the course of a criminal investigation petitioner stated that he chose to file returns using married, filing separately filing status because it was to his benefit to do so. He also indicated to the special agent that he felt capable of preparing returns for himself and his wife, and has prepared his son's tax return, Form 1040A, for several years. Petitioner prepared the returns in issue for himself and his wife through the use of receipts, cancelled checks and estimates. As petitioner controlled the family finances, the only role petitioner's wife had in the preparation of her income tax return was to give the petitioner her Form W-2 from her place of employment and to sign her returns when requested to do so by petitioner. In some instances, petitioner's returns reflected the same deductions that were contained on Mrs. Green's returns. In fact, the supporting documentation *185 for some of the deductions taken on petitioner's returns was identical to that for Mrs. Green's returns. When the examining agent asked petitioner for an explanation of the double educations, he stated that he had been in a hurry and that it was "sloppy and stupid" to have prepared the returns incorrectly. Furthermore, when the agent called petitioner's attention to the fact that the duplications of his itemized deductions occurred over a 4-year period and asked whether he still considered it "sloppy and stupid," he stated that that was the reason it was "stupid." When questioned with respect to why he had deliberately taken duplicate deductions on his and his wife's return, petitioner admitted that he knew what he did was wrong and could not justify his actions, except to complain about the excessive burdens of the tax system on married couples. He further stated that part of the reason he took the deductions was that he thought he "could get away with it." Respondent, in his notice of deficiency, determined deficiencies and additions to tax for fraud for each of the taxable years 1971 through 1975. Petitioner conceded the adjustments for the deficiencies in tax for the years *186 1971 through 1975. Respondent conceded the addition to tax for fraud for the year 1975. OPINION After concessions, the sole issue remaining for decision is whether the duplication of certain deductions on both petitioner's and his wife's separate returns for the years 1971 through 1974 constituted fraud by petitioner within the meaning of section 6653(b). The existence of fraud is an issue of fact to be determined from a consideration of the entire record. Stratton v. Commissioner, 54 T.C. 255, 284 (1970). Respondent bears the burden of proving fraud, and must affirmatively establish its existence by clear and convincing evidence. Section 7454(a); Rule 142(b), Tax Court Rules of Practice and Procedure; Beaver v. Commissioner, 55 T.C. 85, 92 (1970); Imburgia v. Commissioner, 22 T.C. 1002, 1014 (1954). If any part of an underpayment of tax is due to fraud with an intent to evade tax, then respondent's section 6653(b) claim must be sustained. [1] When fraud is asserted for more than one taxable year, respondent must show that some part of the underpayment was due to fraud for each taxable year in issue for the corresponding *187 addition for fraud for each such year to be upheld. Otsuki v. Commissioner, 53 T.C. 96, 105 (1969). However, respondent is not required to prove the precise amount of the underpayment resulting from fraud. Otsuki v. Commissioner, supra at 105. In order to prove fraud the respondent must show that the taxpayer intended to evade taxes by conduct calculated to conceal, mislead or otherwise prevent the collection of such taxes. Stoltzfus v. United States, 398 F.2d 1002, 1004 (3d Cir. 1968); Webb v. Commissioner, 394 F.2d 366, 377 (5th Cir. 1968); Marcus v. Commissioner, 70 T.C. 562, 577 (1978). According to Davis v. Commissioner, 184 F.2d 86, 87 (10th Cir. 1950), as quoted in Olinger v. Commissioner, 234 F.2d 823 (5th Cir. 1956), "Fraud implies bad faith, intentional wrongdoing and a sinister motive. It is never imputed or presumed and the courts should not sustain findings of fraud upon circumstances which at the most create only suspicion." 234 F.2d at 824. However, since fraud rarely can be established by direct proof, fraudulent intent may be proven *188 circumstantially from the conduct of the taxpayer and all other evidence of record. Stone v. Commissioner, 56 T.C. 213, 224 (1971). In our case, petitioner's income was understated by reason of taking excessive deductions. It is well settled that a fraudulent understatement of income can be accomplished by means of an overstatement of deductions. Hicks Co., Inc. v. Commissioner, 56 T.C. 982, 1019 (1971); Neaderland v. Commissioner, 52 T.C. 532, 540 (1969), affd. 424 F.2d 639 (2d Cir. 1970). Bearing in mind the above-stated principles, we find inescapable the conclusion that the duplicate deductions on petitioner's and his wife's returns were taken with an intent to evade taxes. Petitioner was a revenue officer with the Internal Revenue Service for nearly 20 years. He reached the highest grade level attainable in such capacity *189 and was considered to be capable of handling the more complex cases in his division. Over this period, petitioner constantly was exposed to the tax law and was responsible for assisting delinquent taxpayers in filling out their income tax returns. Such experience is relevant since, in determining the presence or absence of fraud, the trier of fact "must consider the native equipment and the training and experience of the party charged." Iley v. Commissioner, 19 T.C. 631, 635 (1952). Petitioner's background makes it highly unlikely that he duplicated the deductions in other than bad faith. Petitioner's statements during questioning by an IRS special agent are particularly damaging to his position. During such questioning, petitioner admitted that he knew that his actions were improper, but contended that they were compelled by the unfair burden that the tax system allegedly places on married couples. Clearly petitioner knew that the duplication of deductions was not allowable under law, and he claimed them to correct a perceived "marriage penalty." Further, petitioner admitted that he took the double deductions because he thought he "could get away with it." *190 These statements are strong evidence of intentional wrongdoing. We found the testimony of respondent's witnesses to be trustworthy and forthright. Based on this credible evidence, petitioner's and his wife's tax returns, and the record as a whole, we are satisfied that petitioner's duplication of deductions was deliberate and fraudulent with intent to evade tax. [2] Accordingly, Decision will be entered under Rule 155. Footnotes
1. Sec. 6653(b) provides, in pertinent part, as follows: SEC. 6653. FAILURE TO PAY TAX. (b) Fraud.--If any part of any underpayment * * * of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 50 percent of the underpayment. * * *↩
2. While we draw no affirmative inference of fraud from the fact that petitioner failed to testify, neither can we assume that petitioner would have had a reasonable explanation for his actions had he testified. Thus, the failure to testify "resulted in a record which presented no explanation as to circumstances requiring explanation." Shaw v. Commissioner, 252 F.2d 681, 682 (6th Cir. 1958), affg. 27 T.C. 561 (1956); Finestone v. Commissioner, T.C. Memo. 1960-164↩.