DAVID McKINNEY AND HATTIE McKINNEY, Petitioners, v. COMMISSIONER OF INTERNAL REVENUE, Respondent
McKinney v. Commissioner
Docket No. 8853-79.
United States Tax Court
T.C. Memo 1983-440; 1983 Tax Ct. Memo LEXIS 344; 46 T.C.M. (CCH) 864; T.C.M. (RIA) 83440; July 27, 1983. Darrell F. Brown, for the petitioners. Clyde W. Mauldin, for the respondent. KORNER
MEMORANDUM FINDINGS OF FACT AND OPINION KORNER, Judge: Respondent determined deficiencies in petitioners' Federal income tax and additions to tax, as follows: Additions to Tax Under Sections
Year
Deficiency
6653(a)
[1] 6653(b) 1975
$61,721.81
$3,086.09
1976
81,238.70
$40,641.85 *
*347 After concessions by the parties at or before trial, the issues to be decided are: (1) The correct cost basis (for purposes of depreciation) of Doctor McKinney's office building; (2) whether petitioners have established the cost (for depreciation purposes) of furniture, fixtures and x-ray equipment bought by Doctor McKinney in 1974, and used in his medical practice; (3) whether petitioners are entitled to bad debt deductions in 1975 and 1976; (4) whether Doctor McKinney suffered a net operating loss in his medical practice during 1975, which could be carried forward and deducted in 1976; (5) whether petitioners are entitled to deduct salary expenses in 1975 in excess of $18,807.25; (6) whether petitioners had deductible medical expenses in 1976: (7) whether petitioners are entitled to claim an investment tax credit in 1976; (8) whether petitioner *348 David McKinney was liable for self-employment tax in 1975 and 1976; [2]
(9) whether petitioners are liable for additions to tax under section 6653(a) for tax year 1975; and (10) whether petitioner David McKinney is liable for additions to tax under section 6653(b) for calendar year 1976. Some of the facts have been stipulated and are so found. The exhibits are also incorporated herein by this reference. At the time of filing their petition herein, petitioners were residents of Detroit, Michigan. Doctor David McKinney (hereinafter "petitioner" or "Doctor McKinney") has practiced medicine since 1972. [3] For calendar years 1975 and 1976, petitioners' joint income tax returns were prepared by an accountant, with whom petitioner discussed the contents of the returns before filing. Petitioners' returns were prepared on the cash receipts and disbursements basis. *349 Since the issues which we must address are largely unrelated to each other, both as to the facts and the applicable law, it will be covenient to group together our remaining findings and opinion on each issue, considered in the numerical order listed above herein. 1. Petitioner's Depreciation Deductions on his Medical Building
On June 26, 1974, petitioner purchased a developed piece of real estate at 15901 Greenfield Street, in Detroit, Michigan. A building was located on this property, and was used by Doctor McKinney to house his medical practice. At the time that his 1975 and 1976 returns were being prepared, petitioner told James Norman, his accountant and tax return preparer, that the medical building had a basis of $412,100. James Norman did not see any documentation that would have supported petitioner's statement, but accepted the figure as being true cost, and treated it as such in the returns. On his 1975 and 1976 tax returns, petitioner depreciated this medical building and claimed a $39,810 depreciation deduction in each year. On said returns, petitioner listed his cost basis in the building as $412,100, [4] and calculated this depreciation deduction using *350 a 10-year useful life and the straight-line method. In his notice of deficiency, respondent calculated petitioner's depreciation deduction using a $157,000 cost basis for the property located at 15901 Greenfield Street. Respondent valued the building at $125,600, and the land at $31,400. Respondent also determined that the useful life of the building was 30 years, and depreciation was allowed on a straight-line basis in 1975 and 1976 in the amount of $4,187 in each year. The additional depreciation claimed by petitioner was disallowed. Petitioner does not contest respondent's proportional allocation of the cost basis between the land and the building, nor does petitioner argue that respondent erred in determining that the useful life of the building was 30 years. Rather, petitioner contends that he actually paid $500,000 for this property, and that his cost basis for the medical building was substantially higher than the $125,600 figure used by respondent. Specifically, petitioner claims that, for reasons unstated, the seller required *351 two sales contracts to be drawn up: one with a $500,000 purchase price, and one with a purchase price of $157,000. Petitioner asserts that the former rather than the latter contract accurately reflects the purchase price. At trial, a copy of the executed and recorded land contract, whereby petitioner acquired the property at 15901 Greenfield Street, was admitted into evidence as a joint exhibit. The total purchase price shown by this contract was $157,000. The partie further stipulated into evidence, as a joint exhibit, a document entitled "Settlement Statement of Property." This exhibit sets forth the various debits and credits to buyer and seller which were made at the closing of petitioner's acquisition of the property located at 15901 Greenfield Street. The purchase price listed on this document was also $157,000. Prior to the issuance of respondent's statutory notice herein, and during her audit of petitioner's 1975 and 1976 returns, respondent's revenue agent asked petitioner about the cost price of the property, and petitioner told her the property had cost him around $160,000. On this record, we find that a purchase price for this property of $157,000 is fully established, *352 and respondent's determination is accordingly sustained. Section 1012. [5]
2. Petitioner's Depreciation Deduction for Furniture and Fixtures.
On his 1975 and 1976 tax returns, petitioner claimed a $2,800 depreciation deduction on office furniture and equipment. The depreciation schedules attached to these returns state that during 1974, Doctor McKinney acquired office furniture and fixtures in the amount of $14,000. The same depreciation schedules state that petitioner also acquired $7,000 worth of X-ray equipment in the same year. Respondent determined that no depreciation deduction was allowable, since petitioner had failed to substantiate his cost basis in this property. *353 Petitioner offered no evidence to establish his cost basis in the property. In fact, James Norman, petitioner's accountant and return preparer, testified that the basis of this property, as reflected on petitioner's 1975 and 1976 depreciation schedules, was its replacement or fair market value, rather than its cost. It has long been held that, "[f]or the purpose of depreciating an asset, an estimate of present value cannot substitute for proof of its actual cost, since depreciation seeks to restore cost rather than value." Gudmundsson v. Commissioner,T.C. Memo. 1978-299. Since petitioner has failed to submit documentation that could establish his cost basis in the office furniture, fixtures, or X-ray equipment, we hold for the respondent on this issue. 3. Petitioner's Bad Debt Deductions.
On his 1975 tax return, petitioner reported a deduction for bad debts in the amount of $18,001.13. On his 1976 tax return, petitioner reported a deduction for bad debts in the amount of $24,579. Petitioner claimed both of these deductions based upon the failure of his patients to pay for his professional services, as billed. The amounts deducted were not included *354 in petitioner's income for either year. Before claiming these amounts as bad debts under section 166, respondent's regulations clearly require a cash method taxpayer to include such income on his return. Section 1.166-1(e), Income Tax Regs. In this case, petitioner is admittedly a cash method taxpayer. Accordingly, petitioner is not entitled to bad debt deductions for the value of unpaid fees when such items have never been reported as income. Gertz v. Commissioner,64 T.C. 598 (1975). 4. Net Operating Loss Deduction.
On his 1975 tax return, petitioner reported on Schedule C a $9,834.13 loss resulting from his medical practice. On this same return, however, petitioner separately reported $20,000 of additional gross income from "General Practice." He thus reported adjusted gross income of $10,165.87, net income of $4,601.08 (after itemized deductions), and no taxable income (after personal exemptions). For the following tax year, 1976, petitioner claimed the full $9,834.13 again as a net operating loss deduction. Section 172(c) defines a net operating loss as the excess of allowable deductions over the taxpayer's gross income, computed with the modifications *355 specified in section 172(d). The latter subsection provides, inter alia, that no deductions shall be allowed for personal exemptions. Section 172(d)(3). It is immediately apparent, therefore, that petitioner had no net operating loss for 1975, even accepting for this purpose his 1975 return as filed, since he reported a net income of $4,601.08, before personal exemptions. Although the exact amount of petitioner's net income remains to be determined herein and will be reflected in the necessary computations to be submitted under Rule 155, resulting from our disposition of issues and the concessions made by the parties, it is apparent that petitioner's net income will not be less than the amount reported on his return. He accordingly had not net operating loss for 1975, and respondent's determination, disallowing the claimed net operating loss carry over deduction in 1976, is sustained. [6]
*356 5. Additional Salary Expense 1975 and 6. Medical Expense 1976
Petitioner's return for 1975 claimed a deduction for salaries in the amount of $44,307.25. Upon audit, respondent disallowed $38,000 of this amount for lack of substantiation, but conceded at trial that an additional $12,500 was allowable. As to the remaining amount of $25,500 in dispute, petitioner conceded that he had no documentation or other substantiation for the claimed expense, but testified that the claimed deduction, as shown in his return, was correct. Likewise, for the year 1976, petitioner claimed a deduction for medical expense of $4,539.93, which respondent disallowed for lack of substantiation. Once again, petitioner conceded that he had nothing to support the claimed deduction but his testimony that it was correct. Petitioner had the burden of proof on both these issues, Welch v. Helvering,290 U.S. 111 (1933), and he has simply failed to meet it. His unsupported testimony that his returns were correct as filed does not suffice. Wilkinson v. Commissioner,71 T.C. 633, 639 (1979). Respondent is sustained on both these issues. 7. Claimed Investment *357 Tax Credit for Calendar Year 1976.
Petitioner claimed an investment tax credit on his 1976 income tax return in the amount of $12,663.48. The property that gave rise to the claimed investment credit includes the real property at 15901 Greenfield Street, office furniture and fixtures, and X-ray equipment. All of this property was purchased and placed in service in June of 1974. (See Issues 1 and 2, supra.) [7] Respondent disallowed the claimed credit on the grounds that (a) the office building did not qualify as section 38 property, and (b) with respect to the furniture, fixtures and X-ray equipment, the credit was claimed in the wrong year. Section 38 generally provides that there shall be a credit against income tax for investments made in certain property, as defined in sections 46 through 50. For property to qualify for an investment credit, the property must fall within the definition of "section 38 property" as that term is defined in section 48. Section 48 states in pertinent part: *358 SEC. 48. DEFINITIONS: SPECIAL RULES. (a) Section 38 Property. -- (1) In general.--Except as provided in this subsection, the term "section 38 property" means -- (A) tangible personal property, or (B) other tangible property(not including a building and its structural components) * * *. Section 1.48-1(c), Income Tax Regs., defines the term "tangible personal property." This regulation states: For purposes of this section, the term "tangible personal property" means any tangible property except land and improvements thereto, such as buildings or other inherently permanent structures * * *. It is clear that petitioner's medical building cannot qualify under section 48(a)(1)(A) as tangible personal property. From the express wording of the statute, it is also clear that this building does not qualify as other tangible property. Section 48(a)(1)(B). To the extent that the investment tax credit at issue results from claiming this medical building as qualifying property under section 38, we sustain respondent's determination. The remaining assets claimed as section 38 property include X-ray equipment and office furnishings. An extensive analysis concerning whether *359 this property qualifies for the investment tax credit is not necessary, since the parties have stipulated that the X-ray equipment and office furniture and fixtures were placed in service in 1974. A section 38 credit with respect to any property shall be allowed only for the first taxable year in which such property is placed in service by the taxpayer. Section 46(a), (c); section 1.46-3(d)(4)(i), Income Tax Regs. Therefore, even if we were to assume that these remaining assets qualified as section 38 property, petitioner has claimed it for the wrong year, and the year 1974 is not before us. Respondent's determination on this issue is sustained. 9. Addition to Tax Under Section 6653(a)
For tax year 1975, respondent contends that petitioner is liable for additions to tax under section 6653(a). Section 6653(a) provides that there shall be added to the tax an amount equal to five percent of the underpayment, if any part of the underpayment is due to negligence or the intentional disregard of rules or regulations. Petitioner has failed to present any evidence on this issue. The burden of proof is on the petitioner. Enoch v. Commissioner,57 T.C. 781, 801 (1972). *360 Petitioner has failed to carry his burden of proof, and we hold for the respondent. 10. Additions to Tax Under Section 6653(b)
The final issue for decision is whether petitioner filed a fraudulent income tax return for calendar year 1976, within the meaning of section 6653(b, so as to be liable for the additions to tax provided by that section, as determined by respondent. Respondent has the burden of establishing fraud by clear and convincing evidence. Section 7454(a); Rule 142(b); Stone v. Commissioner,56 T.C. 213, 220 (1971). If respondent is to prevail on this issue, he must establish that there was some underpayment of tax by petitioner for tax year 1976, and that some part of this underpayment was due to fraud. Plunkett v. Commissioner,465 P.2d 299 (7th Cir. 1972), affg. a Memorandum Opinion of this Court. The existence of fraud is a question of fact that we must decide after careful consideration of all the evidence in the record. Gajewski v. Commissioner,67 T.C. 181, 199 (1976), affd. 578 F.2d 1383 (8th Cir. 1978); Mensik v. Commissioner,328 F.2d 147, 150 (7th Cir. 1964), *361 affg. 37 T.C. 703 (1962). For purposes of proving fraud, an understatement of taxes can be accomplished not only by an omission of income, but also by overstatement of deductions. Hicks Co. v. Commissioner,56 T.C. 982, 1019 (1971), affd. 470 F.2d 87 (1st Cir. 1972); Neaderland v. Commissioner,52 T.C. 532 (1969), affd. 424 F.2d 639 (2d Cir. 1970), cert. denied 400 U.S. 827 (1970). It is clear from our disposition of issues herein, and from petitioner's concessions, that respondent has met his burden of showing that there was an underpayment of tax by petitioner for 1976, but the burden of proof still rests upon the respondent to show that some part of the underpayment was due to fraud with the intent to evade tax. Stone v. Commissioner,supra;Otsuki v. Commissioner,53 T.C. 96, 105 (1969). Respondent must show that the taxpayer intended to evade taxes which he knew or believed to be owing by conduct intended to conceal, or otherwise prevent the collection of such taxes. Stoltzfus v. United States,398 F.2d 1002, 1004 (3d Cir. 1968), *362 cert. denied 393 U.S. 1020 (1969); Webb v. Commissioner,394 F.2d 366, 377-378 (5th Cir. 1968), affg. a Memorandum Opinion of this Court; Acker v. Commissioner,26 T.C. 107, 111-113 (1956). Proof of a taxpayer's fraudulent intent is seldom established by direct evidence. Rather, fraudulent intent must in many instances be proved by the whole course of petitioner's conduct, and the inferences that can be properly drawn from such behavior. Otsuki v. Commissioner,supra;Nicholas v. Commissioner,70 T.C. 1057, 1065 (1978). Within this framework, the following incidents are material and relevant, and are established by this record: Petitioner claimed a deduction of $40,323.20 in his 1976 tax return on account of "legal and professional fees." Upon audit, respondent disallowed $33,888.20 of this amount, but at trial conceded a further $23,888.20. Petitioner conceded the remaining $10,000. The latter amount represented a gift by petitioner to his children. Prior to filing his return for 1976, this item had been discussed between petitioner and his accountant/return-preparer, James Norman, who had *363 advised petitioner that the item was not deductible. Likewise, on his 1976 tax return, petitioner claimed a $7,694.76 miscellaneous expense deduction, related to his medical practice. Respondent disallowed $6,534.50 of this amount, and petitioner has conceded the correctness of this adjustment. Included in the disallowed amount claimed by petitioner was an item of $1,138.56, which petitioner admitted were tuition payments to a modeling agency for his children. At trial, petitioner testified that the $10,000 transfer, and the tuition payments to the modeling agency, were not gifts to his children, but rather remuneration for services rendered to him around the office. Among other things, Doctor McKinney stated that his children answered the telephone, sorted mail and picked up debris in front of the office.During 1976, all of petitioner's children were under the age of twelve. We find it inherently incredible that petitioner, an intelligent and educated professional man, would pay a total of $11,138.56 for such services, performed by small children on a part-time basis, or that he could seriously believe that such payments represented reasonable and deductible compensation *364 for services rendered in his medical practice under section 162, especially in the face of his accountant's contrary advice. We conclude from these facts, as well as his actions in burying these deductions with other deductions on his return under misleading labels, that Doctor McKinney knew that taking these deductions was improper, and his persistence in doing so is clear and convincing evidence of fraudulent intent. See Gano v. Commissioner,19 B.T.A. 518, 529, 533 (1930); Rank v. Commissioner, a Memorandum Opinion of this Court dated October 13, 1953. We hold for the respondent on this issue. In accordance with this opinion, Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, except as otherwise noted. ↩
*. The addition to tax under section 6653(b) is only asserted against petitioner David McKinney.↩
2. Petitioners produced no evidence and failed to argue this issue on brief. Accordingly, we deem it to be abandoned.↩
3. Petitioner Hattie McKinney is involved in the present case only because she filed a joint return with her husband for the years now in issue. She will not be referred to further herein.↩
4. The 1975 return depreciation schedule shows this figure as "Replacement Cost," but the 1976 return shows it as "Cost or Other Basis."↩
5. At trial, petitioner attempted to introduce into evidence a purchase contract for this property, allegedly executed by petitioner and the seller, and showing a purchase price of $500,000. The document was not witnessed nor recorded. It was refused admission into evidence as being inconsistent with and contradictory to the stipulated joint exhibits of the parties. No other evidence, except petitioner's unsupported testimony, was offered to substantiate the claimed $500,000 cost figure.↩
6. Our disposition of this issue makes it unnecessary to consider the other manifest errors in petitioner's position, viz. the failure to make further modifications to the claimed loss as required by section 172(d)(4), and the failure to carry the claimed loss back to the years 1972, 1973 and 1974 before attempting to carry any remaining unused amount forward to 1976. Section 172(b).↩
7. The investment credit claimed by petitioner was computed to be $42,843, but was limited to $12,663.48 since this was the amount of the tax liability shown on his return.↩