LEWIS D. ALLEN AND DEBORAH L. ALLEN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Allen v. Commissioner
Docket No. 8483-92
United States Tax Court
T.C. Memo 1994-511; 1994 Tax Ct. Memo LEXIS 519; 68 T.C.M. (CCH) 935; October 17, 1994, Filed *519 Decision will be entered for respondent. Lewis D. Allen and Deborah L. Allen, pro sese. For respondent: Roslyn D. Grand. SCOTT SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined no deficiency in petitioners' Federal income tax for 1984, but determined an addition to tax under section 6653(b)(1)[1] of $ 1,428 and an addition to tax under section 6653(b)(2) of 50 percent of the interest due on all of the underpayment of tax. Respondent determined a deficiency in petitioners' Federal income tax for 1985 of $ 572, an addition to tax under 6653(b)(1) of $ 1,388, and an addition to tax under section 6653(b)(2) of 50 percent of the interest on the entire underpayment of tax. For 1986, respondent determined a deficiency in petitioners' Federal income tax of $ 660, an addition to tax under section 6653(b)(1)(A) of $ 2,743, and an addition to tax under section 6653(b)(1)(B) of 50 percent of the interest due on all of the underpayment of tax. Previously respondent, based on delinquent returns filed by petitioners, had proposed an addition to tax for each of the years here involved under section 6651(a), but in the notice of deficiency reversed that determination *520 with the explanation that the additions to tax under both section 6651(a) and section 6653(b) may not be asserted on the same return. Respondent in the notice of deficiency stated that since no part of the underpayments is due to fraud on the part of Deborah L. Allen, the additions to tax for fraud do not apply to her. The issues for decision in this case are: (1) Whether petitioner Lewis D. Allen is liable for the additions to tax for fraud under section 6653(b)(1) and (2) for the years 1984 and 1985, and under section 6653(b)(1)(A) and (B) for the year 1986; and (2) whether petitioners are entitled to a capital loss of $ 3,000 in each of the years 1984, 1985, and 1986. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioners Lewis D. and Deborah L. Allen resided in Chattanooga, *521 Tennessee, at the time of the filing of their petition in this case. Lewis D. Allen (petitioner) enrolled as a student at Pittsburgh State University in the fall of 1971. He attended classes at that university through May of 1979. In 1977, he obtained a bachelor of science degree in biology and in 1979 obtained a bachelor of science degree in medical technology. On June 11, 1979, petitioner began working for the University of Kansas Medical Center. His initial salary was under $ 20,000 per year. In June 1980 petitioner opened a savings account at Twin Cities Bank using the Social Security number 514-32-XXXX. Petitioner did not file Federal income tax returns for any of the years 1979 through 1983 and paid no income tax for any of those years. Respondent determined deficiencies in petitioner's income tax and some additions to tax for the years 1979 through 1983, which were the subject of a case in this Court at docket No. 27699-92, which was disposed of by a decision of this Court, pursuant to agreement of the parties, entered September 8, 1993. In that decision, deficiencies were determined for each of the years 1979 through 1983, additions to tax were determined under section *522 6651(a)(1) for failure to file returns, and additions to tax for negligence were determined for each of the years 1979 through 1983. Additions to tax for each of the years 1979 through 1983 were also determined under section 6654. Petitioners did not file Federal income tax returns for any of the years 1984, 1985, and 1986 when the returns were due. Petitioner was indicated for income tax evasion under section 7201 for each of the years 1984, 1985, and 1986 on May 19, 1988, and on several counts of using a false Social Security number. He was convicted on all counts of the indictment. The conviction was appealed to the Court of Appeals for the Tenth Circuit and was reversed and remanded on the ground that petitioner had not been sufficiently warned of the dangers of proceeding pro se by the District Court and, therefore, his rights under the Sixth Amendment had been violated. After the reversal, petitioner was again indicted on the same charges, but by order of May 4, 1990, this indictment was dismissed by the same trial judge who had heard the initial case. In the order of dismissal the trial judge stated that both the defendant (petitioner) and the Government had been afforded *523 a fair trial, and that the evidence presented overwhelmingly supported the jury's verdict of guilty on all counts, that petitioner had been duly and properly sentenced and had served his time, and in the opinion of the court, it would be unfair, both to the Government and to the defendant, to retry the matter. In the order the court stated: "This court is not sympathetic with tax protestors, like the defendant, but the circumstances are such that the court on its own motion will dismiss this case." Subsequently, petitioner was again indicted. He filed a supplemental motion to dismiss. The Government opposed the motion. After hearing oral argument, a different District Court judge dismissed the indictment filed on the ground that the dismissal of the case by the judge who had originally been the trial judge was with prejudice, and, therefore, the dismissal order was final and the Government's remedy had been to appeal within 30 days from the date the order was entered. Since the Government had not appealed the order, but instead on June 20, 1990, obtained a superseding indictment which contained four counts of the same offense covered in the previous dismissal, the case was dismissed *524 because the defendant was placed in jeopardy a second time in violation of the Fifth Amendment. On September 17, 1988, petitioner and his wife, Deborah L. Allen, filed joint Federal tax returns for the years 1984, 1985, and 1986, reporting total income of $ 25,801, $ 27,020, and $ 29,823, respectively. On their 1985 return, petitioners claimed a short-term loss from "Commodities Futures Exchange Transactions" in the amount of $ 10,000. Petitioners filed amended Federal income tax returns for the taxable years 1984, 1985, and 1986 on April 15, 1992, after the issuance by respondent of the statutory notice of deficiency in this case on January 24, 1992. On the 1984 amended return, petitioners claimed a short-term capital loss from "Commodities Futures Exchange Transactions" in the amount of $ 10,762.92, but limited the claimed deduction for 1984 to $ 3,000 with a claimed carryover of the balance of the loss to subsequent years. On February 13, 1984, petitioner began working for the Midwest Organ Bank as a medical technologist. On March 6, 1984, he filed a Form W-4 with the Midwest Organ Bank using the Social Security number 514-32-XXXX and claiming exemption from tax, stating *525 that he had owed no tax in the prior years and any tax withheld had been refunded. Petitioner's correct Social Security number is 514-52-XXXX. On March 16, 1984, petitioner filed another Form W-4 with the Midwest Organ Bank using the Social Security number 514-32-XXXX and claiming exempt status. On February 13, 1985, petitioner filed a Form W-4 with the Midwest Organ Bank using again the Social Security number 514-32-XXXX and claiming exempt status. On February 14, 1986, petitioner filed a Form W-4 with the Midwest Organ Bank using the Social Security number 514-32-XXXX and again claiming exempt status. The business manager of Midwest Organ Bank wrote petitioner a letter dated March 14, 1984, to which he had attached a copy of the Form W-4 that petitioner had submitted to Midwest Organ Bank, a copy of a blank Form W-4, and a copy of page 7 of Circular E, Employer's Tax Guide. The letter stated that the Form W-4 petitioner had submitted was considered invalid by the Internal Revenue Service (IRS) and asked petitioner to submit a valid Form W-4 by March 16, 1984, or the business manager would be required to withhold as if petitioner were single and claiming no withholding allowances. *526 Petitioner wrote numerous letters to various people in the IRS starting in 1984 concerning the questioning of the Forms W-4 he had filed. In a letter dated November 28, 1984, addressed to an Appeals officer of the IRS in Austin, Texas, petitioner referred to the Form W-4 and Circular E, the Employer's Tax Guide, and stated that he had certified on his Form W-4 that he met the required conditions and did not owe any Federal income tax the previous year or expect to owe any in the current year and, therefore, his Form W-4 was valid. Petitioner in this and numerous other letters written to various officers and employees of the IRS stated various reasons for his claim. One such reason assigned was that he was an individual, not a corporation or other type of entity subject to withholding, that the submission of a Form W-4 was voluntary and that he did not voluntarily submit the Form W-4, but did so rather than suffer the consequences of not submitting it. He also questioned the jurisdiction of the Government since he was an individual citizen, and questioned the authority of the IRS to collect taxes. Numerous other letters were written by petitioner to various persons in the IRS *527 in which claims were made that wages were in exchange for work and not taxable, that taxes did not apply to individuals, and similar arguments. Petitioner was a member of the "Fellowship of the Sovereigns" which was a group that encouraged individuals not to pay income taxes. The Fellowship of the Sovereigns was based in Independence, Missouri. Petitioner received in the years 1984 through 1986 a number of pamphlets and books through the Fellowship of the Sovereigns advising individuals how to avoid paying income tax and even suggesting types of letters to be written to the IRS in response to various actions by the IRS. Some of the letters in the record that petitioner wrote to the IRS contain some of the language set forth in these documents. Some of these documents point out the numerous cases holding many of the positions advocated in the documents to be invalid and suggested methods of arguing against them. The various collections of documents which petitioner received through the Fellowship of the Sovereigns suggest most of the tax protester type arguments that have been discussed in numerous cases by this and other courts. In 1984, petitioner filed for bankruptcy. *528 A brokerage document which apparently is a substitute Form 1099 for an account beginning with "XX-871" with the name Lewis Allen on it showed an identification or Social Security number of 531-23-XXXX. The copy of the document which is in evidence is barely legible, but does at one point show under profit or loss realized 1/01/84 thru 12/31/84 an amount of $ 10,762.92 as a loss. The balance of the account number other than XX-871 on the copy of the document in evidence is illegible. Another document in evidence on the letterhead of Hedgers, Inc., of Kansas City, Missouri, "Introducing Brokers for Wolcott & Lincoln Futures, Inc." in the name of Lewis Allen, shows a gain on the sale of soybean oil futures contracts in June 1984 of $ 4,950 for account number XX-871, but shows no taxpayer identification number. Respondent in the notice of deficiency determined that petitioner was liable for the addition to tax for fraud in all the years here in issue. The claim by petitioners for a capital loss of $ 3,000 in each of the years here in issue was raised by an oral amendment to their petition at the beginning of the trial of this case. OPINION The primary issue in this case is whether *529 petitioner is liable for the addition to tax for fraud for each of the years 1984, 1985, and 1986. This, of course, is an issue on which respondent has the burden of proof. Sec. 7454(a); Rule 142(b). The standard of proof that respondent must meet is clear and convincing evidence that petitioner intended to evade taxes known or believed to be owing. Stoltzfus v. United States, 398 F.2d 1002 (3d Cir. 1968). This Court has referred to the Commissioner's burden to be a showing of intentional wrongdoing by the taxpayer designed to evade tax known to be owing by conduct intended to conceal or mislead. Miller v. Commissioner, 94 T.C. 316, 333 (1990). Whether an underpayment is due to fraud is a question of fact. Fraud will never be presumed, Beaver v. Commissioner, 55 T.C. 85, 92 (1970), but may be proved by circumstantial evidence. As we have pointed out, direct proof of a taxpayer's intent is rarely available, but the taxpayer's course of conduct may establish the requisite fraudulent intent. Stone v. Commissioner, 56 T.C. 213, 223-224 (1971). The record *530 here shows that petitioner filed no returns at least from 1979 through the years here involved until after his indictment for tax evasion in 1988 when he filed delinquent returns for 1984, 1985, and 1986, the years covered by the indictment. On these returns petitioner reported the salary he had received each year. The failure to file returns standing alone is not proof of fraud, but this fact may be considered along with other facts in determining the taxpayer's intent. Bradford v. Commissioner, 796 F.2d 303, 307 (9th Cir. 1986), affg. T.C. Memo. 1984-601. In the Bradford case the Court listed a number of facts that might give rise to a finding of fraudulent intent, including the understatement of income, inadequate records, failure to file tax returns, implausible or inconsistent explanations of behavior, concealment of assets, failure to cooperate with tax authorities, filing false Forms W-4, failure to make estimated tax payments, dealing in cash, engaging in illegal activity, and attempting to conceal illegal activity. The record in this case shows that petitioner filed false Forms W-4. They were false not only *531 in claiming exempt status, but also in using a false Social Security number, which is a clear indicium of an effort to conceal. Petitioners introduced into evidence a number of documents which they claimed supported the fact that they had a real, honest belief that wages were not taxable income, but an even exchange of work for pay with no resulting gain, and that individuals, as distinguished from corporations and similar entities, were not subject to income tax. In some of these documents written by petitioner to the IRS it is stated that petitioner was not required to file Forms W-4. Petitioner also stated in some of the documents that respondent was not authorized to question the Forms W-4 filed by a taxpayer, but must accept any statement made. Some of the letters written by petitioner to the IRS stated that the IRS had no authority to collect tax, but tax was whatever an individual voluntarily wished to pay. Numerous similar statements were made in these letters. We have perused the various documents submitted by petitioner that fall broadly into two categories. One of the categories is documents written by various individuals that were furnished to petitioner by an organization *532 called Fellowship of the Sovereigns of Independence, Missouri, of which petitioner was a member. These various documents were published by various organizations, one of them being an organization called National Commodity Barter Association. The documents ranged in date from approximately 1982 through 1987, and all of them were clearly an effort to instruct a person in how to evade the payment of income tax. In fact, many of them pointed out various cases which had held contra to the positions advocated in the documents. Some of these documents actually contained suggested letters for the use of taxpayers where a false Form W-4 filed by the taxpayer was questioned, suggesting that the IRS be asked certain questions to "put the IRS on the defensive". Also, suggested letters by a taxpayer for other communications to the IRS were included in the documents. In reviewing the letters written by petitioner to the IRS, which are exhibits in this case, it is obvious that a number of the statements very closely parallel the suggested letters contained in the documents petitioner put in evidence, which documents he stated that he relied on for his beliefs. In our view, the information *533 which petitioner put in evidence, claiming that it supported his good faith belief that he did not owe taxes or was not required to file a return, contains such thinly veiled directions on how to evade the Federal income tax that it is inconceivable that a person of petitioner's education would not recognize this material for what it is. See Niedringhaus v. Commissioner, 99 T.C. 202 (1992). During the years 1984 through 1986, there were so many cases holding the type of arguments petitioner has made to be frivolous and invalid that we do not believe that petitioner, in good faith, thought that he was not required to file a return or to pay taxes. The case of Rowlee v. Commissioner, 80 T.C. 1111 (1983), had been decided over a year before petitioners' 1984 return was due. The facts in the Rowlee case very closely resemble the facts in the instant case. In the Rowlee case we discussed the positions taken by the taxpayer and concluded that a part of the deficiency in each of the years there involved was due to fraud. Because of the information petitioner was consistently getting from groups who advocated that *534 Federal income taxes not be paid, it is unlikely that petitioner was not aware of the Rowlee case. There were numerous other similar cases mentioned in the information petitioner introduced in evidence as supporting his beliefs. Petitioner used a false Social Security number not only on his Form W-4, but also on a savings account he opened, and if a commodity account had any relation to him, which we are unwilling to hold it did on the basis of this record, he used a different false Social Security number on that account. During the trial petitioner was evasive about his knowledge of his correct Social Security number. When asked about using the correct Social Security number during his college years, he said he probably did, but he was not sure, and later stated that his father got his Social Security number for him, and he did not find out that the other Social Security numbers he had used were false until 1987. This statement is totally unbelievable. Petitioner testified that he worked in the summers while he was in college and also at certain part-time jobs during his college years. Certainly he was required to furnish a Social Security number at his work. The record *535 also shows that early in 1984 petitioner received a letter from the business manager of the place where he was employed with respect to the necessity of furnishing a proper Form W-4 to his employer, and that IRS Circular E was furnished to him at the time. The information with respect to furnishing a proper Form W-4 was continuously thereafter brought to petitioner's attention. Petitioner had two college degrees. A man of his education certainly would have understood from the various materials he read that he was required to file Federal income tax returns and pay tax on the salary he earned and other income he received. The clear conclusion from the evidence here is that petitioner followed the procedure he did in an attempt to evade income tax he knew to be owing. To the extent petitioner testified that he believed the positions he took were justified, we do not believe his testimony. All other evidence in this record clearly indicates to the contrary of this testimony. Petitioner argues that since he was tried and his conviction was reversed, he cannot be required to pay an addition to tax for civil fraud, because to determine civil fraud against him after he has been tried *536 for criminal fraud puts him in double jeopardy as to the tax offense. This argument has no merit. There is no double jeopardy in determining a civil addition to tax for fraud even though a person has been indicted and tried for tax evasion. Ianniello v. Commissioner, 98 T.C. 165, 183-185 (1992). Furthermore, an acquittal, or in this case reversal, of the tax evasion conviction does not collaterally estop respondent from determining the addition to tax for civil fraud for the same year. Helvering v. Mitchell, 303 U.S. 391, 397-398 (1938); Neaderland v. Commissioner, 424 F.2d 639 (2d Cir. 1970), affg. 52 T.C. 532 (1969); see also Traficant v. Commissioner, 884 F.2d 258, 262-263 (6th Cir. 1989), affg. 89 T.C. 501 (1987). There is no merit to petitioner's contention that respondent is not entitled to have a determination of an addition to tax for civil fraud in this case because of the reversal by the Court of Appeals for the Tenth Circuit of petitioner's criminal conviction. Since petitioner's criminal *537 conviction was reversed, it is not evidence in support for respondent's determination of fraud in this case. In making findings with respect to the conviction and reversal, we did it at petitioner's request because of his argument of either double jeopardy or collateral estoppel. However, the evidence in this case, totally apart from any prior conviction of petitioner, is clear and convincing of fraud on the part of petitioner with intent to evade taxes in each of the years here in issue. The only remaining issue is whether petitioner has established that he had a loss of $ 10,762.92 in 1984 from trading in commodity futures contracts. Petitioner produced two documents which gave some indication of someone by the name of Lewis Allen having certain trades in soybean oil in 1984. One of the documents shows purchases in June 1984 of soybean oil futures. It shows a "net gain" on the transaction of $ 4,950, and an ending ledger balance of $ 735. The other document appears to be a Form 1099B for the calendar year 1984 of a Lewis Allen with a Social Security number of 531-23-XXXX. This document purports to show a realized loss for the period January 1 to December 31, 1984, of $ 10,762.92. *538 It appears from the record that petitioner Lewis D. Allen's father was named Lewis G. Allen and, therefore, with a Social Security number different from any used by petitioner on other documents, it is difficult to conclude that the Form 1099B is that of petitioner. Also petitioner was unable to show any evidence of payment of $ 10,000 or any other amount to either Hedgers, Inc., of Kansas City, or Wolcott & Lincoln Futures, Inc. Petitioner's testimony dealt with payments that he believed he made to Hedgers, Inc., but he had no documentary evidence to support such payments. Petitioner testified that he filed for bankruptcy in 1984 to avoid paying for his losses. Based on this record, we conclude that petitioner has failed to establish that he had a loss in any amount from hedging transactions in the year 1984 or any of the other years here involved. Decision will be entered for respondent. Footnotes
1. All section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.↩